Per Curiam :
This case was referred pursuant to Eule 45 (since April 1,1964 Eule 57) to Trial Commissioner Mastín G. White, with directions to make findings of fact and recommendations for conclusion of law. The Commissioner has done so and has written an opinion with which we agree *470 and which, we adopt with minor modifications. This case differs from Sofranoff v. United States, 165 Ct. Cl. 470 (1964), in that the pertinent regulations were not followed in that case, whereas they were followed in the present case. Plaintiff is, therefore, not entitled to recover, and his petition is dismissed.
The opinion, as modified, is as follows:
The plaintiff, who had served in the Armed Forces as an enlisted man for more than 10 years, was given an undesirable discharge by the Air Force on July 1, 1954. The Air Force purported to act in accordance with Air Force Regulation No. 39-17 (9 February 1954). At the time of this discharge, the plaintiff was serving under a 6-year enlistment in the Air Force, and he had completed only a little more than one-third of the 6-year term.
The plaintiff alleges in the first amended petition that the undesirable discharge of July 1,1954, “was invalid and illegal and did not effect his separation from the Air Force * * * .” He accordingly seeks in the present action to recover military pay and allowances for the period commencing July 2¿ 1954, the day after he was discharged. The plaintiff states in this connection that he is entitled to recover pay and allowances up to the date of judgment, but it should be noted at the outset that any recovery would necessarily be limited to the unexpired portion of the 6-year term of the enlistment from which the plaintiff was discharged. Murray v. United States, 154 Ct. Cl. 185, 191 (1961); Smith v. United States, 155 Ct. Cl. 682, 691 (1961); Clackum v. United States, 161 Ct. Cl. 34, 36 (1963).
The plaintiff’s allegation of invalidity and illegality respecting the undesirable discharge of July 1, 1954, is based primarily upon the contention that the Air Force, under its own regulations, could not properly issue an undesirable discharge to him without first referring his case to a medical board for a determination as to whether he was entitled to retirement or a discharge because of physical disability. In addition, the plaintiff asserts in a brief filed for the consideration of the commissioner that, in view of the enactment of the Uniform Code of Military Justice, there is at least sub *471 stantial doubt whether the Air Force could validly provide by regulation for the administrative issuance of undesirable discharges.
The second of the points mentioned in the preceding paragraph will be discussed first.
It apparently is the plaintiff’s theory that any form of discharge certificate issued by a military service which is phrased in derogatory language and which diminishes the benefits that otherwise would be available to the discharged serviceman is a punitive discharge; and since Congress, in the Uniform Code of Military Justice enacted as Section 1 of the Act of May 5,1950 (64 Stat. 107) ,[1] expressly authorized courts-martial to adjudge dishonorable discharges and bad-conduct discharges as punishments against persons convicted of criminal offenses defined in the Code, this impliedly prohibited the military services from providing by regulation for the administrative issuance of any sort of derogatory discharge that would diminish the benefits otherwise available to the discharged person.
It is pertinent to observe that the same statute which enacted the Uniform Code of Military Justice also provided in Section 6 (64 Stat. at p. 145) that the former Article of War 108, as amended (41 Stat. 809), should continue to have the same force, effect, and applicability as theretofore, although it should no longer be known as an Article of War. The statutory provision formerly designated as Article of War 108 declared in part that no enlisted man should be discharged before the expiration of his term of service except by order of the President, or by order of the Secretary of the military department in which he was serving,[2] or by sentence of a court-martial. Substantially similar statutory language had been in effect since the enactment of Article of War 11 by the Act of April 10, 1806 (2 Stat. 859, 361); and it had been judicially held that such language granted to the executive branch of the Government authority to de *472 termine the form and terms of discharge certificates to be issued administratively to discharged military personnel (Davis v. Woodring, 111 F. 2d 528, 525 (D.C. Cir., 1940)), it being sufficient if the form and terms of a discharge certificate adequately indicated the nature of the service performed (Patterson v. Lamb, 329 U.S. 539, 545 (1947)). Furthermore, this executive authority had been held to extend to the issuance administratively of discharges without honor. Reid v. United States, 161 Fed. 469, 472 (S.D.N.Y., 1908). Congress showed a clear intention, in Section 6 of the same statute which enacted the Uniform Code of Military Justice, that the executive authority respecting military discharges should continue and should not be affected by the enactment of the Code.
The authority of the Secretary of the Air Force, subsequent to the enactment of the Uniform Code of Military Justice, to provide by regulation for the administrative issuance of undesirable discharges was upheld by this court in the case of Grant v. United States, 162 Ct. Cl. 600 (1963).
On the basis of the decision in the Grant case, it is necessary to reject the plaintiff’s contention in the present case that the Secretary of the Air Force could not validly provide by regulation for the administrative issuance of undesirable discharges.
Of course, regulations promulgated by the Secretary of a military department to govern the administrative issuance of discharges that disadvantage the discharged person with respect to future benefits must meet the basic requirements of due process of law. Clackum v. United States, 148 Ct. Cl. 404, 408, 410 (1960); Bland v. Connally, 293 F. 2d 852, 858, 860 (D.C. Cir., 1961). Furthermore, whatever regulations may be promulgated must be followed by a military service in connection with the issuance of such discharges. Service v. Dulles, 354 U.S. 363, 388 (1957); Vitarelli v. Seaton, 359 U.S. 535, 539-540 (1959); Murray v. United States, supra, at p. 191; Smith v. United States, supra, at p. 691.
This brings us to a consideration of the contention made by the plaintiff in the present case that, under the Air Force’s own regulations, it could not properly issue an undesirable *473 discharge to the plaintiff without first referring his case to a medical board for a determination as to whether he was entitled to retirement or a discharge because of physical disability.
At the time pertinent to this litigation, Air Force Regulation No. 39-17 constituted the authority within the Air Force for the discharge of enlisted personnel because of “unfitness.” The grounds for the issuance of such a discharge were set out in the regulation, and these included “evidence of habits or traits of character manifested by * * * chronic alcoholism * * this being the particular ground that was involved in the plaintiff’s case. The regulation prescribed a rather elaborate procedure, which included the convening of a board of officers to consider the case of an enlisted man whose discharge for unfitness had been recommended, the holding of a hearing by the board, and the right of the affected person to appear before the board in person and to be represented by counsel. The board could recommend that the affected person be discharged because of unfitness and be given an undesirable discharge, or that he be discharged because of unsuitability under Air Force Regulation No. 39-16 and be given a general discharge, or that he be retained in the service. The board’s action was subject to consideration and approval or disapproval by the convening authority and by the commander exercising general court-martial jurisdiction.
The plaintiff apparently relies upon the portion of Air Force Regulation No. 39-17 which declared that a discharge under the regulation could be accomplished only after “Conclusive determination has been made that a mental or physical defect does not exist which would warrant consideration under AFM 35-4.” In this connection, the plaintiff, prior to his appearance before the board of officers set up under Air Force Regulation No. 39-17, was given an examination by an Air Force medical officer. The diagnosis was “Alcoholism, chronic, moderate, manifested by excessive drinking, disorderly behavior when under the influence of alcohol * * * .” The medical officer concluded that there were no mental or physical defects which warranted disposition of the *474 plaintiff’s case through medical channels, and recommended that the plaintiff be separated from the service under the provisions of Air Force Eegulation No. 39-17 because of alcoholism.
According to the plaintiff, the conclusion that there were no mental or physical defects warranting disposition of his case through medical channels was erroneous. The plaintiff refers to the fact that, as shown by his medical records in the Armed Forces, he once sustained a head injury which required that he be hospitalized for about 15 days, a splenec-tomy was performed upon him, and he was a chronic alcoholic.
The plaintiff calls attention to Air Force Manual 35-4, which was cited in Air Force Eegulation No. 39-17 and which covered the subject of retirement and separation of military personnel by virtue of physical disability. The manual provided in part that:
A patient who is unfit or whose fitness for further general military service appears, for medical reasons, to be in doubt will be referred to a medical board. * * *
The plaintiff argues that his case, because of the head injury, the splenectomy, and his chronic alcoholism, came within the scope of the quoted language, and, therefore, that it was necessary for the Air Force to refer his case to a medical board for consideration of the question whether he was entitled to retirement or a discharge because of physical disability, before the Air Force could properly decide on the issuance of an undesirable discharge to him.
The head injury mentioned by the plaintiff was sustained on or about June 10,1947, while the plaintiff was serving as an enlisted man in the Navy. He was hospitalized for this injury until on or about June 25,1947. Thereafter, the plaintiff continued to serve in the Navy until February 6, 1948, when he was discharged. A year later, he enlisted in the Army, and he served as a soldier for more than 4 months, after which he was transferred to the Air Force. The plaintiff served in the Air Force for more than 5 years, which involved a reenlistment. Each enlistment and reenlistment involved a medical determination by the military authorities *475 that the plaintiff was physically qualified to perform full military duty. Moreover, the plaintiff has not presented to the court evidence proving that, after the period of hospitalization in June 1947, the plaintiff’s physical capacity to perform full military duty was affected by the 1947 head injury. Consequently, the mere fact that this head injury occurred in 1947 was not sufficient to raise a doubt concerning the plaintiff’s physical fitness to perform the duties of his- grade at the time in 1954 when his case was being processed under Air Force Regulation No. 39-17.
The splenectomy was performed on the plaintiff in November 1950, while he was serving with the Air Force. After the operation, the plaintiff had a 60-day period of convalescence, and he was then assigned light duties for a period of 3 or 4 weeks. At the end of the latter period, the plaintiff was given regular duties to perform. He served out his then current enlistment and was discharged by the Air Force on February 13,1952. The next day, the plaintiff reenlisted in the Air Force; and he served under that enlistment until the discharge of July 1, 1954, that is involved in the present litigation. The reenlistment in 1952 involved a medical determination by the military authorities that the plaintiff was physically qualified at the time, notwithstanding the splenectomy, to perform full military duty. The plaintiff has not attempted to rebut this by introducing evidence for the purpose of proving that, after the period of convalescence and the period of light duties previously mentioned, the 1950 splenectomy actually affected his physical capacity to perform full military duty during the remaining years of his military service. The plaintiff seems to regard as conclusive the circumstance that, at the time of the plaintiff’s discharge on July 1, 1954, the Yeterans Administration rated a splenectomy as a 30-percent disability. This is immaterial, however, as the disability ratings of the Yeterans Administration are based upon statutes and regulations different from those that govern the retirement or discharge of military personnel. Holliday v. United States, 128 Ct. Cl. 647, 649 (1954).
We turn now to a consideration of the plaintiff’s chronic alcoholism, which, according to the Air Force’s determi *476 nation, rendered the plaintiff unfit for continuation in the service. The plaintiff refers to the dictionary definition of alcoholism as “A diseased condition caused by the excessive use of alcoholic liquors” (Webster’s New INTERNATIONAL Dictionary, 2d edition, unabridged); and he contends that his chronic alcoholism was at least sufficient to raise a doubt as to whether Ms unfitness for further general military service was attributable to medical reasons, within the meaning of the sentence previously quoted from Air Force Manual 85-4, thus making it necessary that Ms case be referred to a medical board for a determination of tMs question before the Air Force could properly issue an undesirable discharge to him under Air Force Begulation No. 39-17.
It is not necessary for the court to decide whether alcoholism is or is not a disease, from the techMcal medical standpoint. It is sufficient for the purposes of the present case that the Air Force, in its Begulation No. 39-17, dealt specifically with chronic alcoholism on the part of enlisted personnel and prescribed a procedure whereby such personnel would be discharged from the service. These provisions dealing expressly with chrome alcoholism would necessarily remove alcoholism from the scope of the provisions of Air Force Manual 35-4 dealing generally with the subject of physical disability. Baltimore Nat. Bank v. Tax Commission, 297 U.S. 209, 215 (1936).
For the reasons indicated above, it is my opimon that the Air Force had the authority to promulgate its Begulation No. 39-17 providing (among other things) for the issuance of undesirable discharges to chronic alcoholics, and that the plaintiff has failed to prove that the Air Force did not act in accordance with this regulation when it issued an undesirable discharge to the plaintiff.
It is my recommendation, therefore, that the petition be dismissed.
findings op pact
1. The plaintiff is a citizen of the United States. He resided at 3805 Military Boad NW., Washington, D.C., when this action was initiated.
2. On October 3,1942, the plaintiff entered upon a period of active duty with the Navy, serving as an enlisted man.
*477 3. (a) On or about June 10,1947, while the plaintiff was serving on active duty with the Navy, as indicated in finding 2, he suffered an injury to his head, for which he was hospitalized until on or about June 25,1947. This injury was held to be “LOD” (in line of duty).
(b) The evidence in the record does not show that, after the period of hospitalization mentioned in paragraph (a) of this finding, the plaintiff’s physical capacity to perform full military duty was affected by the head injury referred to in paragraph (a) of this finding.
4. (a) On February 6,1948, the plaintiff was given an undesirable discharge by the Navy.
(b) Subsequently, the Navy Board of Eeview, Discharges and Dismissals canceled the undesirable discharge mentioned in paragraph (a) of this finding and issued to the plaintiff a discharge under honorable conditions by reason of unsuitability.
5. On February 8,1949, the plaintiff enlisted in the United States Army. This enlistment involved a medical determination by the military authorities that the plaintiff was physically qualified to perform full military duty. The plaintiff was transferred to the United States Air Force on June 20, 1949.
6. (a) On November 12,1950, while the plaintiff was serving on active duty with the Air Force under the enlistment referred to in finding 5, a splenectomy was performed upon him. The splenectomy was held to be incurred in line of duty.
(b) After the splenectomy mentioned in paragraph (a) of this finding, the plaintiff went through a 60-day period of convalescence, and then resumed the performance of military duties. He was assigned light duties for a period of 3 or 4 weeks, and then was given regular duties.
(c) The evidence in the record does not show that, after the period of convalescence and the period of light duties referred to in paragraph (b) of this finding, the plaintiff’s physical capacity to perform full military duty was affected by the splenectomy mentioned in paragraph (a) of this finding.
7. On February 13,1952, the plaintiff was discharged under honorable conditions by the Air Force.
*478 8. On February 14, 1952, the plaintiff reenlisted in the Air Force for a 6-year term. The reenlistment involved a medical determination by the military authorities that the plaintiff was physically qualified to perform full military duty. The plaintiff served under the enlistment of February 14, 1952, until July 1, 1954, when he was discharged as undesirable under circumstances related in subsequent findings.
9. During the period June 1953-April 1954, while the plaintiff was serving in the Air Force under the enlistment mentioned in finding 8, he was convicted by court-martial or punished under Article 15 of the Uniform Code of Military Justice for the following offenses:
(a) being disrespectful toward a commissioned officer, failing to obey a lawful order of a commissioned officer, and disorderly conduct in station on or about June 26,1958;
(b) being drank and disorderly in public on or about November 16,1958;
(c) driving while intoxicated on or about November 22, 1953;
(d) driving while intoxicated on or about December 1, 1953;
(e) being drunk in public on or about December 3, 1953;
(f) being drunk in public on or about January 21, 1954; and
(g) being drunk in public on or about April 21, 1954.
10. On May 6, 1954, the plaintiff was given a psychiatric evaluation by an Air Force medical officer. The diagnosis was “Alcoholism, chronic, moderate, manifested by excessive drinking, disorderly behavior when under the influence of alcohol * * The medical officer recommended that the plaintiff “be separated from the military service under the provisions of AFR 39-17 because of alcoholism.” In this connection, it was concluded by the medical officer that there were no mental or physical defects which warranted disposition of the plaintiff’s case through medical channels, which would have provided the plaintiff with a full and fair hearing by a physical evaluation board.
11. Under the date of May 20, 1954, the commanding officer of the plaintiff’s organization, the Unit Command Sec *479 tion, 3625th. United States Air Force Hospital, Tyndall Air Force Base, Florida, recommended that the plaintiff appear before a board convened under Air Force Regulation No. 39-17 to determine his fitness for retention in the service. The commanding officer’s recommendation stated (among other things) that “Airman has given evidence of chronic alcoholism and disorderly behavior by repeated commission of offenses * * and that “In view of the above pattern of behavior and futile attempts made to effect rehabilitation of this airman, I conclude that it [sic] is of minimal benefit to the Air Force and his retention therein would be detrimental to the good of the service.”
12. (a) On May 24, 1954, the plaintiff was tried at the Tyndall Air Force Base, Florida, before a special court-martial for allegedly violating Article 134 of the Uniform Code of Military Justice by being drunk at a public place on or about May 13, 1954, and being drunk in station on or about May 15,1954.
(b) At the conclusion of the trial, the plaintiff was found guilty of the charge and specifications, and he was sentenced to be restricted to the limits of the Tyndall Air Force Base for 3 months and to forfeit $65 per month for 6 months.
(c) A recommendation for clemency, signed by four members of the special court-martial, was submitted under the date of May 27,1954.
13. (a) On May 28, 1954, at the Tyndall Air Force Base, Florida, the plaintiff appeared before a board of officers appointed pursuant to Air Force Regulation No. 39-17 by the commanding officer of the 3625th Flying Training Wing (Interceptor). After a hearing, the board made the following finding:
The board finds that the respondent properly falls within the category outlined in paragraph 3a (1), AFR 39-17, “habits or traits of character manifested by chronic alcoholism.”
The board made the following recommendation:
The Board recommends that Airman Basic George N. Rowe be discharged because of unfitness and given an undesirable discharge.
*480 (b) The finding and recommendation of the board were approved by an officer having general court-martial jurisdiction on June 21, 1954.
14. Pursuant to the proceedings mentioned in findings 10, 11, and 13, the Air Force issued an undesirable discharge to the plaintiff on July 1,1954.
15. (a) On July 9, 1954, the plaintiff requested that the issuance of an undesirable discharge to him on July 1, 1954, be reviewed by the Air Force Discharge Review Board, and that the character of the discharge be changed.
(b) The board concluded, however, that the evidence submitted was insufficient to warrant a change in the type and nature of the plaintiff’s discharge.
(c) Accordingly, the Secretary of the Air Force on or about October 20, 1954, directed that the plaintiff’s application be denied.
16. Subsequently, the plaintiff applied for a reconsideration of the review of his discharge. This request was denied on or about January 26,1956.
17. (a) In February 1956, the plaintiff applied to the Air Force Board for Correction of Military Records for a change in the nature of the discharge that was issued to him on July 1,1954.
(b) The plaintiff’s application was denied without a hearing, on the ground that the plaintiff had not submitted sufficient evidence to establish a showing of probable error or injustice.
18. (a) On March 25, 1960, the plaintiff filed another application for relief with the Air Force Board for Correction of Military Records. In this application, the plaintiff requested the following corrective action:
(1) That on July 1,1954,1 was not discharged from the Air Force, but was retained on duty and was duly reenlisted on February 14, 1958, for a further period of six years.
(2) In alternative to (1) above; That on July 1,1954, I was placed on the temporary disability retired list and on July 1,1959,1 was permanently retired for physical disability together with appropriate findings to support such action under the provisions of Title IV of the *481 Career Compensation Act of 1949, as amended, and codified in 10 U.S.C., Ch. 61.
(3) In alternative to (1) or (2) above; That on July 1, 1954, I was discharged from the Air Force with a discharge under honorable conditions.
(b) A hearing was held on July 5, 1961, before the Air Force Board for Correction of Military Records on the plaintiff’s application. The plaintiff personally appeared and testified before the hoard, and he was represented before the board by his present legal counsel.
(c) In passing upon the plaintiff’s second application, the Air Force Board for Correction of Military Records made the following findings (among others) :
27. On the basis of applicant’s record of continuing misconduct without response to rehabilitation efforts, his commander was fully complying with regulations in recommending that an AFR 39-17 Board consider applicant’s fitness for retention in the service. The Board found applicant unfit by reason of habits or traits of character manifested by chronic alcoholism. The commander and the Board, had full knowledge that applicant’s performance of duty was excellent when he was on the job; however, he was a constant disciplinary problem due to excessive use of alcohol and resulting absence, incapacity and disorderly conduct which negated his value to the service. There was no evidence, medical or otherwise, that he had any mental or physical disability that would warrant processing his case through medical channels. Applicant’s alcoholism has never been considered to have been caused by psychiatric disease which would be compensable under service and VA regulations. It is our opinion that the findings and recommendations of the AFR 39-17 Board are fully sustained by the evidence.
28. Careful study of the facts and circumstances of this case leads to the conclusion that applicant’s alcoholism resulted from intemperate and wanton overindulgence in alcohol and was thus due to his own intentional misconduct. Applicant has failed to demonstrate that an error or injustice exists in his case and his application should be denied. It is stressed that this finding is based only upon service following the reenlistment contracted 14 February 1952.
*482 (d) The Air Force Board for Correction of Military Records recommended that the plaintiff’s second application be denied.
(e) On December 18,1961, an Assistant Secretary of the Air Force approved the recommendation of the Air Force Board for Correction of Military Records and denied the plaintiff’s second application for relief.
19. At the time pertinent to this litigation, Air Force Regulation No. 39-17 (9 February 1954) provided in part as follows:
1. Purpose and Scope. This Regulation outlines the conditions and procedures, and constitutes the authority within the Air Force for the discharge of enlisted personnel * * * serving on active duty for unfitness. * * *
2. Policy. All commanders will maintain high personnel standards within the Air Force. Constant attention will be given to the problem of early recognition of unfit airmen and elimination in cases where rehabilitation has proven impossible or impractical. An airman will not be reassigned who has demonstrated unfitness for any of the reasons listed in paragraph 3a, until procedure outlined herein has been followed, except as provided in paragraph 5. Commanders who thus avoid proper disposition of substandard airmen are not accepting their command responsibility, create serious morale problems in the gaining unit, and add to the cost of final elimination.
a. The discharge of enlisted personnel under this Regulation will be accomplished only after:
(1) Conclusive determination has been made that a mental or physical defect does not exist which would warrant consideration under AFM 35-4.
(2) Definite determination has been made that, for any of the causes mentioned in this Regulation, the person cannot be rehabilitated to the extent where he may be expected to become a satisfactory airman. Action will not be taken under this Regulation in lieu of disciplinary action.

%

3. Procedure. The procedure to be folowed in reporting airmen for board action with a view to separation for unfitness and subsequent action required are set forth in a and b below. Care will be exercised in the evaluation of an airman prior to recommending that he appear before a board of officers or be discharged for *483 any of the reasons indicated. When appropriate, all aspects of the character guidance program will be employed prior to making such recommendations.
a. Commander’s Report. When an airman has demonstrated that he is unfit for further retention in the military service for any of the reasons indicated in (1) and (2) below and his rehabilitation is considered impracticable after repeated attempts to accomplish same have failed (except where attempts at rehabilitation are impracticable as in confirmed drug addiction), his commander will report the facts (see b below) to the next higher command and recommend that the airman be required to appear before a board of officers convened under the authority contained herein. The commander will make such a report if the airman:
(1) Gives evidence of habits or traits of character manifested by antisocial or amoral trend, chronic alcoholism,, criminalism, sexual perversion, drug addiction, pathological lying, or other misconduct. * * * [Emphasis supplied.]
❖
b. Composition of Report. The commander’s report will include the following data:
* '•!= * #
(9) Report of medical officer, including statement that there are no mental or physical defects sufficient to warrant consideration under AFM 35-4. When applicable, report of psychiatric examination will be obtained. * * * $ $ $ $ $
4. Application for Discharge. Airmen who do not hold a Reserve commission will be afforded the opportunity to request discharge in lieu of board action.
Hi H* H* H*
5. Action When Airman Does Not Sign Application. Except when other disposition of the case is considered warranted by intermediate commanders, including reassignment of the airman to another section or unit, the report will be forwarded to the immediate wing or comparable level commander who will, if he considers such action appropriate, convene a board of officers to determine whether the airman should be discharged for unfitness. * * *
a. Medical Evaluation. Am airman scheduled to appear before the board will first appear before the unit medical officer or base surgeon. This medical officer will *484 ascertain whether any mental or physical defect of sufficient import to warrant action under AFM 35-4, exists.
(1) When physical or mental defects of major import are not involved, the medical officer will submit to the board a concise report in which the essential points of the mental and physical condition of the airman are described, to include a statement that there are no mental or physical defects which would warrant action under AFM 35-4. Unless the respondent, his counsel, or the board requests the presence of the medical officer before the board, this report will be received and considered by the board without requiring the medical officer to appear.
$ % * * *
b. Board, Convened by Immediate Wing or Comparable Level Commander. Boards of officers will be convened under this authority by the wing or comparable level commander and will consist of not less than three nor more than five officers, at least one of whom is of field grade. One member of the board will be a legal officer or officer possessing legal experience, if available, especially in instances where the airman is represented by counsel. * * *
* * * * *
c. Board Procedure.
*****
(3) An airman appearing before a board of officers convened under this Regulation is entitled to military counsel of his own selection if reasonably available. The airman may retain civilian counsel at no expense to the Government. If military counsel of the airman’s own choosing is not available, competent military counsel will be furnished by the convening authority. However, if the person specifically declines counsel in writing, counsel need not be furnished.
‡ $ $
d. Authorized Recommendations:
(11 The board will recommend that the person be:
(a) Discharged because of unfitness and given an undesirable discharge, or
(b) Discharged because of unsuitability under AFE 39-16, and given a general discharge, or
(c) Retained in the service.
* * * ❖ ❖
(3) Discharge, if recommended, will be for unfitness, except that discharge because of unsuitability (under *485 AF~R. 39-16 without referral to another board) may be recommended in borderline cases if military circumstances and the character of service rendered by the airman during his current period of service so warrant. As examples, such circumstances would apply where the cause of unfitness has been minor, regarding the length of efficient service or where there has been a definite effort at self-control, or where an airman has, during his current period of service, distinguished himself by an act of heroism which in itself reflected great credit on the airman and the military service.
* * * * *
f. Actionby 0 omening Authority:
(1) Board proceedings will be closely examined by the convening authority and a determination made on the propriety of action recommended.
(2) The convening authority will forward the board proceedings with his recommendation to the commander exercising general court-martial jurisdiction (hereinafter referred to as the “approving authority”).
g. Actionby Approving Authority:
(1) Board proceedings will be closely examined and a determination made on the propriety of action recommended. This examination will include a review by the staff judge advocate for legal sufficiency.
(2) The approving authority in person will approve the action recommended by the board or direct other appropriate disposition of the case. This authority will not be delegated.
* * * * *
8. Form of Discharge Certificate To Be Given. When discharged because of unfitness, DD Form 258AF, “Undesirable Discharge,” will be furnished. When discharged because of unsuitability, DD Form 257AF, “General Discharge,” will be furnished.
20. (a) At the time pertinent to this litigation, the foreword to Air Force Manual 35-4, covering the subject of “Physical Evaluation for Eetention, Eetirement and Separation [of Military Personnel],” stated in part as follows:
1. Purpose and Scope. This Manual prescribes the procedure and sets forth the authority for the retention, retirement, and separation of members of the Air Force with physical defects or disabilities which render such members unfit. * * *
*486 2. Statutory Authority. P.L. 351, 81st Cong., Career Compensation Act of 1949 * * * which generally superseded previous provisions of law relating to physical disability retirement, provides requirements for determining eligibility for physical disability retirement and provisions for separation with severance pay by reason of physical disability. This statute is uniform in its application to all members without regard to component or grade. The provisions of the Career Compensation Act of 1949 and certain other applicable laws are explained in detail in section II, chapter 1.
(b) Paragraph 1 of section I of chapter 1 of the manual cited in paragraph (a) of this finding contained the following definitions (among others):
_ L Physical Disability — A physical or mental condition arising from one or more physical defects and which may render a member unfit to perform the duties of his office, rank, or grade.
# H* H* ^
n. Physically Unfit or “Unfit” — Physical inability to perform the duties of the office, rank, or grade held, which are required during the performance of full military duty, field as well as garrison, in both peace and war.
❖ ❖ Hi Hi ❖
q. Incurred — Appearing herein as part of the phrase “physical disability incurred while entitled to receive basic pay,” refers to the coming into being, while the member is entitled to receive basic pay, of physical disability rendering such member unfit to perform the duties of his office, rank, or grade.
r» Duties of Office, Rank, or Grade — The duties of the particular office, rank, or grade, which are required in the performance of full military duty, field as well as garrison, in both peace and war.
(c) Paragraph 7 of section II of chapter 2' of the manual cited in paragraph (a) of this finding provided as follows:
7. Referral to Medical Board
A patient who is unfit or whose fitness for further general military service appears, for medical reasons, to be in doubt will be referred to a medical board. The medical board consists of three or more officers appointed by the surgeon or hospital commander and convened at his direction or by the direction of the president thereof. The medical board is a clinical body and the person whose *487 case is considered is a patient. The function of the medical board is to insure that the case has been clinically completed to the extent that the hospital staffing and facilities permit, establish the diagnosis, make recommended findings of fitness and unfitness, and make appropriate recommendations of action on the disposition of the patient. The board will be conducted in accordance with the instructions of the appointing authority, and principles of AFR 14 — 20.
21. As of July 1,1954, paragraph 1-i of section I, chapter 1, Air Force Manual 35-4, was revised to provide as follows:
i. Physical Disability — Any manifest or latent impairment of function due to disease or injury regardless of the degree of impairment. The presence of physical disability does not necessarily require a finding of unfitness for duty. The term “physical disability” includes mental diseases other than such inherent defects as behavior disorders, personality disorders, and primary mental deficiency.
(1). Impairment of function is hereby defined as any lessening or weakening of the capacity of the body or any of its parts, to perform that which is considered by accepted medical principles to be the normal activity in the bodily economy.
(2) Manifest impairment is defined as that which is accompanied by signs and/or symptoms.
(3) Latent impairment is defined as that which is not accompanied by signs and/or symptoms but which is of such a nature that there is reasonable and moral certainty, according to accepted medical principles, that signs and/or symptoms will appear within a reasonable period of time.
22. The plaintiff was not, at the time of his undesirable discharge mentioned in finding 14, or in the several months immediately preceding such discharge, referred to a medical board, within the meaning of paragraph 7 of section II of chapter 2 of Air Force Manual 35-4 (see finding 20 (c)).
23. (a) Under the. Veterans Administration Schedule for Rating Disabilities in current use at the time of the plaintiff’s discharge on July 1, 1954, a splenectomy was rated as a 30-percent disability under code number 7706.
(b) The plaintiff has been denied compensation for such disability under laws administered by the Veterans Administration.
*488 24. The plaintiff’s entire service from February 8, 1949, to July 1, 1954, is considered by the Veterans Administration as one continuous period of service; and since the plaintiff was not discharged therefrom under conditions other than dishonorable, he is not entitled to benefits under laws administered by the Veterans Administration on such period of service.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and the petition is therefore dismissed.

The uniform Code of Military Justice is now incorporated in Title 10 of the United States Code as Chapter 47.

 Article of War 108 referred to the Secretary of War, but the powers of that office devolved upon the Secretary of the Army and the Secretary of the Air Force by virtue of Title II of the National Security Act of 1947 (61 Stat. 495, 499).