Laramore, Judge,
delivered tbe opinion of the court:
Plaintiff, Lowell V. Reef (hereinafter referred to as Reef), a former Chief Master Sergeant in the U.S. Air Force, served several enlistments in the Armed Forces. On August 1,1958 he enlisted for a fifth term.
*458 On August 6,1962 plaintiff received notice that a proceeding would be initiated against Mm under AFK 35-66[1] which, provides for the discharge of members of the Air Force who engage in homosexual acts, or possess established and confirmed homosexual tendencies, or habitually associate with individuals known to them to be homosexuals. Plaintiff requested a hearing, and a board of officers was convened. On December 13,1962 Keef appeared before the board and presented evidence which included an admission that at various times during his career as a serviceman he had engaged in homosexual acts. He insisted, however, that he had not been *459 involved in any homosexual relationship since 1960. In addition, he denied that he was now a homosexual. An Air Force psychiatrist testified to his own opinion that plaintiff was not a homosexual. Additional evidence was presented showing an otherwise competent military career.
The board found that plaintiff was a Class II homosexual. It recommended that he be retained in the service and not discharged, having concluded (we assume) that the limited exception in AFE 35-66 which permits retention of known homosexuals “where most unusual circumstances exist” was applicable, and the general rule of AFE 35-66 which makes the “prompt separation of known homosexuals * * * mandatory,” was inapplicable.
On January 14,1963, plaintiff’s current term of enlistment expired, and he was honorably discharged. On January 15, the next day, plaintiff re-enlisted.
The discharge authority (plaintiff’s commanding officer) to whom the board made its recommendation, decided, on February 6, 1963, to withhold his approval. He found that the policy of prompt separation conflicted with the recommendation for retention and that plaintiff’s case was not within the exception which is available only in the “most unusual circumstances.” He decided, therefore, not to act on the recommendation without first submitting it to another authority in the Air Force hierarchy.
In due course, the proceedings were forwarded to Headquarters, U.S. Air Force in Europe (USAFE) with a suggestion that Keef might be separated under the general powers of the Secretary of the Air Force to discharge airmen for the convenience of the government, if he could not be discharged under AFE 35-66.
Oh March 16, 1963, the Commander, USAFE, having reviewed the record, forwarded the proceedings to Headquarters, USAF, in Washington, D.C. He concurred in the discharge authority’s suggestions.
On April IT, 1963, the Air Force Personnel Board (AFPB) in Washington reviewed plaintiff’s case, and without giving plaintiff either notice of the proceedings or an *460 opportunity to appear, it recommended bis discharge under AFT?. 39-14A,[2] for the convenience of the government. On April 25, 1963, the Secretary of the Air Force adopted that recommendation by ordering plaintiff discharged under paragraph 2 of AFR 39-14A, granting him an honorable discharge for the convenience of the government, for unique and unusual reasons not elsewhere stated in the regulation. Plaintiff’s separation designation number (SDN) 21-L and the notation “RE-2 PARAGRAPH 11 AFM 39-9 APPLIES” precluded re-enlistment. On the date of his discharge plaintiff had served 17 years, 8 months and 2 days on active military duty.
Plaintiff applied to the Air Force Board for the Correction of Military Records, and after a hearing on October 27, 1965, the AFBCMR denied his application. His request for reconsideration was denied on November 8, 1966, and suit was timely filed in this court on January 13,1967.
Plaintiff has moved for summary judgment, and defendant has made a cross-motion for summary judgment. We find that plaintiff’s discharge under AFR 39-14A was proper, and we grant defendant’s motion for summary judgment.
His discharge is void, plaintiff argues, because the Air Force violated both AFR 35-66 and AFR 39-14A; in addition, it violated his constitutional rights and several regulations (AFR 35-16 and AFR 11-1) by an ex parte proceeding before the AFPB. We reject all of these contentions.
There is no doubt that the Air Force is bound by its own regulations and that if an applicable regulation is violated the discharge will be invalidated. Service v. Dulles, 354 U.S. 363 (1957) ; Conn v. United States, 180 Ct. Cl. 120, 376 F. 2d 878 (1967) ; Cole v. United States, 171 Ct. Cl. 178 (1965) ; Middleton v. United States, 170 Ct. Cl. 36 (1965) ; Sofranoff v. United States, 165 Ct. Cl. 470 (1964); Watson v. United States, 142 Ct. Cl. 749, 162 F. Supp. 755 (1958). Most re *461 cently, in Birt v. United States, 180 Ct. Cl. 910 (1967), we repeated the general rule that an administrative discharge which ignores procedural rights or regulations, exceeds applicable statutory authority, or violates minimum concepts of basic fairness, is void. The record in this case does not reveal any of these grounds for nullifying a discharge.

I. AFB 35-66

Plaintiff assumes that his discharge must meet the procedural requirements of AFE. 35-66 because it was the initial proceeding against him and, also, because his discharge under AFE 39-14A could not have been accomplished without a breach of AFE 35-66. Even if we assume, arguendo, that AFE 35-66 must be complied with, we find that it has not been transgressed.
The board’s recommendation is binding on the discharge authority and, therefore, continues plaintiff, he must approve the recommendation and close the case. By refusing to approve it and passing the case to a higher authority, he allegedly violated the regulation.
At issue is whether the regulation reguires approval and a closing of the case when the Board makes a retention recommendation. We find that the regulation does not require the course of action asserted by plaintiff.
Plaintiff relies on Interim Change I to AFE 35-66 which reads, in part:
The discharge authority may set aside the findings and recommendations of the board and direct a new board be appointed to hear and consider the case only if he finds jurisdictional defects or legad prejudice to the substantial rights of respondent * * *. [Emphasis added.]
Neither plaintiff nor defendant has argued that the proceeding contained legal prejudice or jurisdictional defects.
Interim Change I prevents the discharge authority from setting aside the board’s conclusions in the absence of the stated defects, but in this case he neither directed a new board nor set aside any recommendation. The discharge authority merely deferred granting his approval, and this does not *462 violate Interim Change I. Plaintiff’s argument that the recommendation must be approved in the absence of these defects is not supported by the regulation. There is no requirement that the discharge authority “rubber-stamp” the board’s recommendation without making his own evaluation of the case.
On the contrary, paragraph 21 of AFR 85-66 [3] charges the discharge authority with a duty to examine the board’s findings and determine whether they are consistent with the facts presented at the hearing. If the board recommends retention, he may not approve a discharge, and he may approve the recommendation. The regulation, however, does not require an unquestioning, pro forma approval. He is charged with the responsibility of reviewing the legal sufficiency of the proceedings, and most importantly, he must insure that the board’s decision is consistent “with the policy in this regulation.”
Class II homosexuals, generally, are discharged as a matter of Air Force policy. Retention may be authorized, as noted above, only where the most unusual circumstances exist and provided the member’s ability to perform military service has not been compromised. Faced with a retention recommendation which precluded both a new board and a discharge under AFR 35-66, but a finding that plaintiff was a Class II homosexual, the discharge authority exercised his discretion (which is narrowed only to the extent that neither a new board nor a discharge may be ordered) and forwarded the case to a superior officer. In his memorandum to the USAFE Commander, he said :
In view of all of these circumstances, I am therefore, refraining from bringing this case to a routine close until it has been submitted to the judgment and guidance of *463 some Air Force authority with, wider powers than are available to me as discharge authority.
A refusal to grant immediate approval is not tantamount to disapproval. The regulation gives the discharge authority power to approve the recommendation and denies him authority to recommend discharge or order a new hearing in the absence of specified defects. The presence of authority to take a particular course of action is not the equivalent of a statement that certain action must be taken. The regulation does not require immediate ratification 'of the recommendation. As we read it, the regulation does not prohibit the discharge authority’s action in postponing his approval until a superior officer has examined the case.
Plaintiff next argues that the discharge authority’s suggestion to US AFE (that Keef might be discharged under some regulation 'other than AFE 35-66) violated the regulation because it proposed that the Secretary avoid the board’s recommendation in the face of a requirement that the recommendation be approved.
We have found that AFE 35-66 does not require immediate sanction of the board’s recommendation and, therefore, the discharge authority’s informal, inter-command suggestion for an alternative disposition of the case merely pointed out an available discharge procedure. It could not violate any requirement of approval because none exists under the regulation.

II. AFB 39-11A

The Secretary ordered plaintiff discharged under the provisions of AFE 39-14A. Plaintiff raises three pertinent objections. By discharging plaintiff under AFE 39-14A the Secretary violated AFE 35-66; the procedure of discharge itself violated the requirements of AFE 39-14A; and the discharge was based on facts which both transpired during a prior enlistment and were determined by a board proceeding held during a prior enlistment and, therefore, it is contrary to established principles 'of law.
We have repeatedly opined that a serviceman does not have a right to remain in the service until the end of his enlistment (McAulay v. United States, 158 Ct. Cl. 359, 305 *464 F. 2d 836 (1962), cert. denied, 373 U.S. 938 (1963), and bis removal may be accomplished administratively (Rowe v. United States, 167 Ct. Cl. 468 (1964), cert. denied, 380 U.S. 961 (1965); Birt v. United States, supra), but the discharge is subject to our scrutiny.
The statutory authority for discharge of personnel by the Secretary prior to the end of their enlistment term is found in 10 U.S.C. § 8811, which provides:
§ 8811. Air Force enlisted members: discharge certificate ; limitations on discharge.
(a) A discharge certificate shall be given to each lawfully inducted or enlisted member of the Air Force upon his discharge.
(b) No enlisted member of the Air Force may be discharged before his term of service expires, except
(1) as prescribed by the Secretary of the Air Force;
(2) by sentence of a general or special court-martial; or
(3) as otherwise provided by law. [Emphasis added.]
The Secretary properly exercised his power to prescribe discharge procedures by adopting 39-14A to separate airmen for the convenience of the government. There is no basis for any claim that his statutory powers have been exceeded, and plaintiff has not made that assertion. AFB, 35-66 is a separate, independent and valid exercise of the same general power to prescribe regulations, and it is not related to AFB 39-14A. These are alternative procedures, and the Air Force is free to choose between them. Plaintiff argues that the discharge under AFB 39-14A could not have occurred but for the violation of Interim Change I to AFB 35-66. We have found, however, that AFB 35-66 has not been violated. An exercise of the Secretary’s power to separate airmen does not violate another regulation which is not related to the basis of the discharge. Moreover, a valid action by the Secretary is not subject to challenge on the ground that another regulation would yield a different result (when that other regulation has not been violated). For these reasons, we find that the discharge under AFB 39-14A did not violate AFB 35-66.
We turn now to the more complex issue, i.e., whether the Air Force followed the procedures prescribed in AFB 39-14A.
*465 Plaintiff’s June 19, 1963 honorable discharge Special Orders state: “AUTH: SDN 21-L AFR 39-14 * * * Subj. Discharge AFR 39-14 par. 2”. Therefore, he claims that the discharge was pursuant to paragraph 2 of AFR 39-14 rather than paragraph 2 of AFR 39-14A [4] (which is the same regulation, as amended on June 28, 1962). The difference is significant, argues plaintiff, because subparagraph 2(a) of the old regulation permits a discharge for “unique and unusual reasons” only when an airman requests a discharge on those grounds. Plaintiff never requested a discharge and, therefore, arguably, the regulation was violated. As additional support for the argument that the discharge was pursuant to subparagraph 2(a) plaintiff points to SDN 21-L which indicates that the reasons for discharge are “unique and unusual.”
There are several faults in plaintiff’s argument. Paragraph 2 is the reference in his discharge orders, not sub-paragraph 2(a). Plaintiff never asked for a discharge, and there is no reason given why the discharge would be pursuant to a procedure which was never considered. Moreover, none of the proceedings ever refers to subparagraph 2(a).
The general introductory statement in paragraph 2 of the old regulation states: “The Secretary may direct the separation of any airman prior to the expiration of [his] term of service. This paragraph may be cited as authority for separation only by Headquarters USAF * * Even if plaintiff had been discharged pursuant to the old regulation (which he was not) this general statement would seem to support the Secretary’s action. We find, however, that plaintiff was discharged pursuant to AFR 39-14A.
Throughout the proceedings leading to plaintiff’s eventual separation, the basis of his proposed discharge was paragraph 2 of AFR 39-14A. The AFPB was convened on April 17,1963 *466 “pursuant to AFR 39-14A,” and it recommended an honorable discharge “pursuant to Para 2, AFR 39-14A.” The actual order of discharge issued by the Secretary referred to the “provisions of PARA 2, AFR 39-14, dated 1 March 1960, as amended, by AFR 39-14.” (Emphasis added.) There is no reference either to AFR 39-14 or to subparagraph 2(a) (or subparagraph 3(p) of AFR 39-14A,[5] which is the restatement of subparagraph 2(a) of AFR 39-14.)
The first reference to AFR 39-14 appears in the April 25, 1963 memorandum from the Separation -Branch of the Air Force; it is repeated in a transmittal memorandum from Headquarters USAF in Washington to the USAFE command, and it appears again in the June 19, 1963 Special Orders issued by Headquarters, Air Transport Wing, McGuire Air Force Base, New Jersey.
The basis for discharge as stated by the Secretary is paramount. His reference is AFR 39-14A, paragraph 2. The transmittal memoranda, in all probability, referred to the then-applicable AFR 39-14 (which is as amended in 1962). Even if they intended to refer to AFR 39-14 (unamended) plaintiff was ordered discharged under AFR 39-14A, and any subsequent incorrect designations in memoranda necessary to process the separation are inconsequential.
We find, therefore, that plaintiff was properly separated under AFR 39-14A.

III. AFPB Proceeding

Plaintiff has challenged the AFPB proceeding which recommended a discharge under AFR 39-14A. Allegedly, the board’s ex parte proceeding and its determination on the bases of a hearing held during a prior enlistment and activities which occurred during a prior enlistment, violate plain *467 tiff’s constitutional rights, existing decisions of this court, and both AFR 35-16 and AFR ll-l.[6]
As a general rule, if the regulation pursuant to which a serviceman is honorably discharged does not, by its own terms, require notice and a hearing, they are required only if the discharge, albeit honorable, either casts a stigma on the serviceman or has some derogatory connotation. Cf. Birt v. United States, supra; Cole v. United States, supra.
Plaintiff argues that a stigma may be found in the reference to “unique and unusual circumstances” and in the designation which precludes re-enlistment. In addition, he argues, the premature discharge of an airman with 17 years of service during an unexpired term 'of enlistment inevitably stigmatizes him.
AFR 35-16 defines the composition and functions of the Air Force Personnel Council, including the AFPB, and requires the Director of the Council to be sure “that the various boards function properly.” Recognizing that there is no specific language about notice and hearing in the regulation, plaintiff argues that the board cannot “function properly” in a situation where the eventual discharge results in a stigma, unless it has given notice and held a hearing. The issue, therefore, is whether he has been stigmatized. If neither a stigma nor a derogatory connotation is present, plaintiff cannot complain that either his constitutional rights or AFR 35-16 has been violated.
Our primary concern in these cases is to prevent the Armed Forces from imposing a penalty on a discharged serviceman without affording him some basic constitutional protection, the essence of which is notice and a hearing. As we said in Clackum v. United States, 148 Ct. Cl. 404, 296 F. 2d, 226 (1960), we will not permit the imposition of a stigma “without respect for even the most elementary notions of due proc *468 ess of law, * * * ” (148 Ct. Cl. at 408, 296 F. 2d at 228). In Birt v. United States, supra, we said: “So long as an administrative discharge is not nsed as a summary guise for punitive action, * * * the military remains within legally proper bounds when it chooses to grant an honorable discharge for the Government’s convenience * * (180 Ct. Cl. at 913-914).
The argument that a discharge prior to the expiration of a current term of enlistment necessarily is a stigma can be summarily rejected. Congress has explicitly provided for a discharge before the expiration of an enlistment term, and we cannot conclude that early discharges must be preceded by notice and a hearing. The Secretary has been given power to prescribe the circumstances and procedures for effecting an honorable discharge. Neither the applicable statutes or regulations, nor the Constitution contain any basis for the conclusion that mere separation pursuant to AFE. 39-14A is enough to require a hearing. We find, therefore, that an honorable discharge for the convenience of the government under AFE 39-14A, prior to the expiration of an enlistment, without more, is within legally proper bounds when effected without notice or a hearing.
Plaintiff’s second “stigma” is based on his discharge form, DD-214, which states as the “reason and authority for discharge: SDN 21-L AFE 39-14” and as the character of service: “HONOEABLE”. He argues that an interested, prospective employer would readily discern some stigma from these references. We do not agree.
SDN 21-L, the reason for discharge, is defined in Attachment 1 to AFE 39-14A as: “Separation — By TJSAF directive — Individual release — Based on unique and unusual circumstances not covered elsewhere in regulations.” (Emphasis added.) It is one of four designations in Attachment A which may be cited as the reason for a discharge under the authority of paragraph 2. The alternatives are: conscientious objector, mass release and early release program. It is evident that the only reference which could have been cited in this case is SDN 21-L. In our opinion it is a nondescript “catchall” reason for separation. Plaintiff has not shown why this *469 stigmatizes Mm or permits derogatory connotations, and we find that it does not.
The remaining, allegedly stigmatizing references are “RE-2 Paragraph 11 AFM 39-9” (which precludes re-enlistment) and “Airman refuses to sign DD Form 214.” Insofar as any stigma which might be attached to his failure to sign the discharge form, it was his own choice and cannot be construed as a stigma cast upon him by some action of the Secretary.
The designation which precludes re-enlistment is not necessarily a mark of discredit or disgrace, and plaintiff has not indicated why he will be stigmatized. Innumerable reasons exist for not permitting a serviceman to re-enlist after he has been discharged for the government’s convenience. Plaintiff’s discharge form does not indicate any derogatory reasons for denying him the opportunity to re-enlist, and we find therefore that, standing alone, the mere fact that he cannot reenlist is not a stigma. Nor can we say that the cumulative effect of these designations is derogatory.
We have concluded that there was neither a stigma nor a derogatory connotation attached to the discharge issued. Therefore, the AFPB’s recommendation without notice or a hearing does not violate either AFR 35-16 or the Constitution.
Plaintiff has asserted that the AFPB proceeding violated one other regulation, AFR 11-1. It prescribes the general procedures applicable to an investigation by a board of officers and specifically requires notice and a hearing. It relates, however, to a board that has been convened by a commander with the “inherent authority to order a board of officers to investigate a matter within his command jurisdiction * * The AFPB was not charged with the duty to investigate, and we find, therefore, that tHs regulation is inapplicable.[7]

*470
IV. Prior Enlistment

The one remaining claim is that plaintiff has been denied due process of law because the separation under AFB, 39-14A was based on events which occurred during a prior enlistment. The only unique and unusual circumstances to which the AFPB could have referred, plaintiff contends, were the homosexual activities during his prior enlistments. Moreover, he adds, the discharge was based on facts adduced in the AFB 35-66 hearing conducted during a prior enlistment.
The substance of plaintiff’s argument is that a discharge for the convenience of the government must be based only on activities which have occurred during the current enlistment. We have held in prior cases that the characterization of a discharge (honorable, dishonorable, undesirable) must be determined on the basis of current enlistment activities. This does not mean, as plaintiff would have us hold, that the reason for discharge must also be limited to an investigation and evaluation only of current enlistment activities.
In Harmon v. Brucker, 355 U.S. 579 (1958), the Secretary ordered a serviceman discharged under conditions other than honorable on the basis of his pre-induction activities. The Court rejected the discharge and held that the applicable statute “properly construed means that the type of discharge to be issued is to be determined solely by the soldier’s military record in the Army.” (355 U.S. at 583; emphasis added.)
In this case the discharge itself contained no stigma. Plaintiff has not indicated any regulation or statute to support his thesis that a discharge which is both honorable and free of stigma cannot be based on behavior other than that which occurred during his current enlistment. The military cannot be prohibited from evaluating a serviceman’s past activities in deciding whether to separate him. Once that decision is reached, however, the type of discharge issued cannot be less favorable than one based on his demeanor during the period of service from which he is separated. Moreover, on the basis of his activities in the current enlistment plaintiff was entitled to an honorable discharge without any stigma, and that is precisely what he received.

*471
V. Breach of Contract

Plaintiff has asserted tbat because bis discharge violated the regulations discussed above it was a wilful and wrongful breach of his enlistment contract. We have found that none of the regulations relied on by plaintiff has been violated and, therefore, we reject this claim.
The rule is well-established that a soldier’s entitlement to pay is dependent upon a statutory right (Bell v. United States, 366 U.S. 393, 401 (1961)) and that the common law governing private employment contracts has no place in the area of military pay (United States v. Williams, 302 U.S. 46 (1937)). A valid separation and discharge terminates the special status of an enlisted man created by his enlistment contract, and it ends whatever entitlement to pay and emoluments that he may have had during an enlistment.

VI. Conclusion

In summary, we find that neither AFE 35-66 nor AFE 39-14A has been infringed; that plaintiff’s discharge did n'ot trample any constitutional right, or violate any other pertinent regulation; and that the breach of contract claim is without merit. Accordingly, we grant defendant’s motion for summary judgment, deny plaintiff’s motion for summary judgment and dismiss the petition.

 AFR 35-06 reads in pertinent part, as follows:
“(3) What the Air Force Policy is Regarding Homosexuality:
“a. Homosexuality will not be tolerated, in the Air Force and prompt separation of known, homosexuals is mandatory. * * *
“b. It is the general policy to discharge members of the Air Force who fall within the classes of eases outlined in paragraph 12 of this regulation. Exceptions to permit retention may be authorized only where the most unusual circumstances exist, and provided the member’s ability to perform military service has not been compromised.”
* # * $ *
“12. Classification of Cases. Cases are generally classified as follows:
“a. Class I. Those cases where a member of the Air Force has engaged in one or more homosexual acts accompanied by assault or coercion, * * *.
“b. Class II. Those cases where a member of the Air Force has engaged in one or more homosexual acts, or has proposed or attempted to perform an act of homosexuality which does not fall into the Class I category. * * *
“c. Class III. Those eases where a member of the Air Force exhibits, professes, or admits to homosexual tendencies, or habitually associates with persons known to him to be homosexuals, but there is no evidence that he has, while a member of the Air Force, engaged in one or more homosexual acts, or has proposed or attempted to perform an act of homosexuality.”
* * * * *
“17. Functions and Duties. The functions and duties of a board of officers convened under this regulation are purely administrative * * *. The primary duties of the board are to develop and review all information concerning the matter under consideration; to arrive at clear, logical, findings of fact and conclusions; and to recommend, on the basis of these findings and conclusions, what action should be taken in the case (see paragraph 20d).”
*****
“20. Procedures for Boards :
“d. Recommendation of Board. The board will announce the findings and recommendation to the respondent, and to his counsel, if he has one. Recommendation of the board will be as follows:
“(1) when the board finds that the respondent is Class II, it will be recommended that:
“(a) The respondent be discharged under AFR 39-17 and furnished either an Undesirable, General, or Honorable Discharge, as considered appropriate, or “(b) .The respondent be retained! in, the service.”

 Paragraph 2 of APR 39-14A (June 28,1962) provides:
“2. Authority To Order Discharge or Release. The Secretary of the Air Porce may direct the separation of any airman prior to expiration of term of service, and when so directed this paragraph will be cited as authority for separation. This paragraph may also be cited as authority for separation by Headquarters USAP, either in an individual case, or in a directive applicable to all members of a class of personnel specified in the directive.”

 Paragraph 21(b) of AFR 35-66 provides, In part:
“b. Discharge Authority. The discharge authority will review the report of the board for legal sufficiency, and will insure that the findings and recommendation of the board are consistent with the available information and with the policy contained in this regulation. He may take final action on the board proceedings, as follows:
* * * * *
“(5) If the board has recommended that the respondent be retained in the service, the discharge authority may approve that recommendation and may not approve discharge.”

 Paragraph 2 of AFR 39-14 provides :
“2. Authority To Order Discharge or Release. The Secretary of the Air Force may direct the separation of any airman prior to expiration of term of service. This paragraph may be cited as authority for separation only by Headquarters USAF, either in an individual case, or in a directive applicable to all members of a class of personnel specified in the directive.
“a. When an airman believes himself entitled to separation for a reason not elsewhere specified in this or other regulations, he may apply for separation under this paragraph, if his reason is unique or unusual; * *

 Paragraph 3p. of AFR 39-14A (June 28, 1962) provides :
“3p. To release an airman for unique mid usual reasons. An airman who believes himself entitled to separation for a reason not specified elsewhere in this or other regulations, may apply for separation under this paragraph if his reason is unique or unusual. His application will be endorsed through command channels.”

 AFR 11-1 provides, in part:
“1. Purpose and Scope. This Regulation prescribes the procedures generally applicable to the conduct of investigations by boards of officers. * * *
“2. Authority. A commander possesses inherent authority to order a board of officers to investigate a matter "within his command jurisdiction whether or not specific regulations exist covering the subject matter involved. * * *”

 As an additional reason for rejecting plaintiff’s claim that the AEPB proceeding required notice and a hearing, we note that plaintiff did not raise any of these questions before the AFBCMR and, therefore, he has failed to exhaust his administrative remedies on this issue. See Pine v. United States, 178 Ct. Cl. 146, 371 F. 2d 466 (1967) ; Alpert v. United States, 161 Ct. Cl. 810 (1963) ; Indiviglio v. United States, 156 Ct. Cl. 241, 299 F. 2d 266, cert. denied, 371 U.S. 913 (1962).