"This case is before the court, without oral argument, on defendant’s motion for summary judgment. Upon review of the parties’ submissions, we find that there are no material facts in dispute and that defendant is entitled to judgment as a matter of law.
"Plaintiff was honorably discharged from the United States Marine Corps in April 1976, shortly after he reported to Parris Island for recruit training. Three, years prior to his enlistment, plaintiff broke his neck and underwent extensive surgery to fuse the affected vertebrae. Plaintiff fully apprised the Corps of his injury, the surgery performed and the extent of his recovery.[1] In September 1975, plaintiff received from the Corps a Certificate of Acceptance in the Reserves stating, inter alia, that he had 'successfully passed the required mental, moral and physical examinations and had been accepted . . .’ Plaintiff thereafter joined the regular Corps and reported for training to Parris Island. At his entry screening examination he was initially found physically fit to undergo military training, but because of his neck condition was shortly referred to a Navy orthopedic clinic for further evaluation of that injury. The clinic’s physician then recommended consideration of plaintiffs case by a board of medical officers and the board ultimately recommended discharge due to an erroneous enlistment. This was effected.
"Plaintiff contests his separation on two grounds. His first argument is that the discharge violated his enlistment contract. It is well established, however, that in circumstances such as these a serviceman does not have a contractual right to remain in the service until his enlistment term expires (see, e.g., Keef v. United States, 185 *924 Ct. Cl. 454, 463-64 (1968)), and that the validity of a discharge depends on the relevant legislation and regulations, not on the principles of contract law. See, e.g., Abbott v. United States, 200 Ct. Cl. 384, 388-89, cert. denied, 414 U.S. 1024 (1973). Proper administrative separation and discharge, therefore, terminate an enlistment contract and end any entitlement to pay or other in-service benefits.
"The remaining issue is whether plaintiffs separation and discharge were, as he alleges, arbitrary and capricious or, as defendant contends, in full accord with statute and the Marine Corps’ policy and procedure. The Corps’ Separation and Retirement Manual (promulgated pursuant to 10 U.S.C. § 1169) states in subparagraph 6012.1e that the Commandant of the Marine Corps may authorize a serviceman’s release for, among other reasons, 'erroneous enlistment,’ if a medical board establishes that a recruit failed to meet the required physical standards when accepted for enlistment. This discretionary authority is designed to permit the Government to avoid future liability resulting from potential aggravation of a serviceman’s preexisting injury or disease. In plaintiffs case, he had been assured that his injury would not preclude his full participation in the Marine Corps. These assurances, however, cannot be used to estop the Government from making and acting upon a procedurally correct reevaluation of his medical condition. See Gatson v. United States, 211 Ct.Cl. 303 (1976).
"We have reviewed the regulations and plaintiffs contentions and find that here the correct procedures were followed. Plaintiff was not, as he alleges, entitled to a trial-type hearing before the medical board and his bare allegation that he was coerced to waive his right to a written rebuttal of the board’s findings does not raise a triable issue. Plaintiff does not offer anything to substantiate his charge that the Government used improper separation forms. He did not have the right, under the regulations, to the form he contends should have been used as that form applies only to a discharge for disability incurred in or aggravated by service activities. Defendant’s documents (which include plaintiffs discharge papers) clearly indicate that plaintiff was honorably discharged for *925 erroneous enlistment based on his undisputed physical injury and no reasonable inference adverse to plaintiffs interests can be drawn from these papers. As for the medical foundation for the Corps’ conclusion that he should not have been accepted for duty, again plaintiff does not raise any triable issue that the decision was arbitrary, capricious, or unsupported by substantial evidence. He unquestionably had a serious neck injury, including wiring of the vertebrae, and even though he can apparently carry on his wrestling activities it is impossible for us to hold that the Marine Corps was barred from rejecting him for its demanding service.
"In summary, we find that, despite plaintiffs contention that he is fit to serve as a United States Marine, the Corps properly acted within its authority to decide otherwise. The materials in the record, viewed in the light most favorable to the plaintiff, cannot be interpreted to show that the Marine Corps acted in an arbitrary or capricious manner in violation of his rights. Accordingly, on consideration of the petition, the defendant’s motion for summary judgment, plaintiffs reply, and the various exhibits, IT IS ORDERED that defendant’s motion is granted and the petition is dismissed.[2]”

 Plaintiff recovered to the extent that he was able to compete quite successfully as a high school wrestler but his own doctors recommended that he not engage in contact sports 'like football.’

 Belatedly, plaintiff has moved (1) to amend his petition to ask for $5,000,000 in damages, and (2) for a writ of mandamus to have the Department of Defense convene a military court of inquiry regarding certain alleged violations of the Uniform Code of Military Justice. These matters are obviously beyond the jurisdiction of this court, and the motions are therefore denied. Damages here would have to be limited at most to back pay as a private, while the requested sum of $5,000,000 clearly includes an overwhelming segment for tort damages which this court cannot award. Similarly, we have no power to order the Defense Department to convene a military court of the type plaintiff requests.
The court has also considered the other arguments and material contained in plaintiffs written submissions (including those received on August 31, 1977 and September 12, 1977) and finds that none of them calls for a result other than dismissal of the petition.