Davis, Judge,
delivered the opinion of the court:
After fifteen years as an enlisted man in the Navy, nine of them as a chief boatswain’s mate,[1] plaintiff was given an undesirable discharge in November 1955. This came about because of an incident which is said to have occurred in a parked automobile in Norfolk, Virginia, on September 18, 1955. Plaintiff was arrested by the civil authorities on a charge of “visiting a place for immoral purposes” with another man. The detail of the accusation was that plaintiff committed, or attempted to commit, an act of perversion. He was convicted, the next day, in the Norfolk City Police Court but, on a de novo trial before the Corporation Court on October 14th, was acquitted.
Between the two civil trials, naval investigators inquired into the incident, and in the course of that investigation plaintiff signed (on September 28th) a statement admitting *38 passive participation in an incompleted homosexual act with a civilian. Two days later, plaintiff, while being examined by a naval psychiatrist, repudiated this statement and explained the incident of September 18th as having no homosexual or immoral coloration. The psychiatrist’s report found that:
* * * Middleton has the kind of personality pattern consistent with either (a) impulsively indulging in socially unacceptable behavior, especially if instigated by someone else, and later feeling appropriate remorse or shame (which would explain his denial of his offense when talking to the psychiatrist); or, (b) having been falsely accused of an offense, impulsively confessing out of bitterness and resentment for authority — in. this case the authority being the u.s. navt.
The doctor also concluded that his psychiatric evaluation could not definitely determine whether or not the alleged offense actually took place, but that “in view of Middleton’s signed statement of 28 September 1955, he must be Considered as a class Two homosexual and, therefore, unfit for retention in the service of the U.S. Navy.” [2]
After this medical report, plaintiff was shown a sample court-martial specification and charge of sodomy, and was told that he would be tried by general court-martial if he did not accept an undesirable discharge.[3] On October 17th— after his acquittal by the Virginia Corporation Court— plaintiff signed a formal statement requesting and agreeing to accept an undesirable discharge “for the good of the service *39 escape general court-martial.” His commanding officer forwarded this statement, together with other papers (including plaintiff’s initial “confession” and the psychiatrist’s report) to the Bureau of Naval Personnel which, shortly, directed that plaintiff be given an undesirable discharge “by reason of unfitness.” This action was taken under sec. Nav xnst. 1620.1, “Procedure for the disposition of cases of homosexuality involving naval personnel” (see finding 6). The discharge was executed on November 12, 1955.
Two years later, in November 1957, plaintiff had a hearing-before the Board for Correction of Naval Records, at which he testified and submitted the results of a lie-detector test. The Board concluded, in January 1958, that the issuance of the undesirable discharge was improper and unwarranted, especially “in view of the psychiatrist’s findings coupled with the acquittal in the civil court on appeal.” Its decision and recommendation was that the undesirable discharge be changed to an honorable discharge as of the date it was issued.[4] However, the Secretary, through an Assistant Secretary, approved only so much of this decision and recommendation as changed Middleton’s undesirable discharge to a general discharge for unsuitability.[5]
The gravamen of this timely suit is that plaintiff’s undesirable discharge from the Navy on November 12,1955, was wholly invalid, and he therefore continued in his right to the active duty pay and allowances of a chief boatswain’s mate until the end of his enlistment. If the premise is correct, the remedy he seeks follows as of course. Sofranoff v. United States, 165 Ct. Cl. 470 (1964); Clackum v. United States, 148 Ct. Cl. 404, 410, 296 F. 2d 226, 229 (1960); same case, 161 Ct. Cl. 34 (1963); Smith v. United States, 155 Ct. Cl. 682 (1961); Murray v. United States, 154 Ct. Cl. 185 (1961).
In testing the validity of a discharge given by an armed service, one of the prime questions is whether the department *40 complied with its own regulations. Cf. Service v. Dulles, 354 U.S. 363 (1957). We have several times held that a discharge issued in violation of regulations is a nullity. Sofranoff v. United States, supra; Smith v. United States, supra; Murray v. United States, supra; Rowe v. United States, 167 Ct. Cl. 468, 470 (1964) cert. denied, 380 U.S. 961 (1965); Cf. Grant v. United States, 162 Ct. Cl. 600, 612 (1963). Not merely the character of the discharge but the fact of discharge is voided by the failure to accord the serviceman his material rights or to follow the required procedures. See Clackum v. United States, supra, 148 Ct. Cl. at 410; Murray v. United States, supra, 154 Ct. Cl. at 188, 191; Sofranoff v. United States, supra, at p. 478.
When the Navy was considering plaintiff’s case, a directive of the Secretary (sec. Nav inst. 5810.1 JAG:l:2CT:au, 5 March 1953, “Policy regarding trial by courts-martial of persons previously tried by civil courts for the same act or acts”) provided:
A person in the naval service who has been tried in a State court, whether convicted or acquitted, shall not be tried by court-martial for the same act or acts except in those unusual cases where trial by court-martial is considered essential in the interests of justice, discipline, and proper administration within the naval service. Such unusual cases, however, shall not be referred to trial without first obtaining permission from the Secretary of the Navy. * * * [emphasis added].
This general instruction, governing all kinds of charges, set forth no exception for accusations of homosexual conduct, and we read it as fully applicable to plaintiff.[6]
At the time the naval investigators first spoke to plaintiff about the incident, he had already been tried by the Norfolk Police Court and therefore came within the ambit of the Secretary’s directive. When on October 17, 1955, he agreed in writing to an undesirable discharge “to escape trial by general court-martial,” he had been acquitted, on his de novo *41 appeal, by the Corporation Court. Nevertheless, the Navy investigators and officials affirmatively led him to believe that he would be court-martialed if he did not acquiesce in the ■undesirable discharge. He was not told that, under the Secretary’s instructions, he could be tried by a military tribunal only if his case was an “unusual” one in which the Secretary determined that a military trial was “essential in the interests of justice, discipline, and proper administration.” On the contrary, he was actively misinformed that he would be court-martialed unless he accepted the less-than-honorable certificate, and was apparently even shown a specification and charge accusing him of the offense of sodomy. He was presented with the stark choice of a court-martial or of being dismissed with the stigma of an undesirable discharge.
To induce the plaintiff by these misleading declarations to agree to an undesirable discharge violated the Navy’s policy directive “regarding trial by courts-martial of persons previously tried by civil courts for the same act or acts” (sec. nav inst. 5810.1, supra). Under that regulation he had the clear right to be free from the wrongful pressure which such misinformation exerted. Another way of putting it is that he was denied due process and fair treatment by being faced with a harsh and disagreeable option which simply did not exist under Navy law. Cf. Clackum v. United States, supra, 148 Ct. Cl. at 406-08, 296 F. 2d at 227-28. In either formulation, the necessary consequence of the wrongful predicament into which the Navy thrust him was to vitiate his acceptance of the lower-grade discharge. His agreement was obtained by improper means and in disregard of his rights, as well as of controlling Navy policy. Since plaintiff’s invalid acceptance of the discharge, in turn, was the necessary basis for his early administrative release from the Navy under sec. nav inst. 1620.1, supra,[7] we must hold the entire discharge to have been void. He was never validly separated from the Navy during his last enlistment.
The plaintiff is entitled to recover his pay and allowances *42 for the unexpired portion of Ms term of enlistment, and judgment is entered to that effect. Recovery will be determined pursuant to Rule 47(c).
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Franklin M. Stone, and the briefs and arguments of counsel, makes findings of fact as follows:
1. Plaintiff enlisted in the United States Navy on August 30,1940, and served continuously on active duty through successive terms of enlistment until November 10,1955, when he was given an undesirable discharge. Plaintiff was rated as a Chief Boatswain’s Mate (permanent appointment), effective January 1, 1946, and he held this rate at the time of his discharge.
0. On September 18, 1955, plaintiff was arrested by civil authorities in Norfolk, Virginia, on a charge of violating Section 29-50 of the Norfolk City Code “Visiting a place for immoral purposes” (involving a person of the same sex). He appeared in the Norfolk City Police Court, and was found guilty of that charge on September 19,1955. Plaintiff appealed his conviction, appeared before the Corporation Court on October 14,1955, and after trial on the same above-mentioned charge, he was found not guilty.
3. Upon receipt of information concerning the proceedings involving plaintiff in the Norfolk City Court on September 18-19, 1955, plaintiff’s commanding officer, on September 21, 1955, requested the Fifth Naval District Intelligence Officer to conduct an investigation of the incident and to report any findings to him.. Thereafter, on September 28, 1955, plaintiff furnished agents of the Office of Naval Intelligence a signed statement in wMch he admitted that on September 18, 1955, he passively participated in a homosexual act with a civilian who began, but did not complete, oral coition on him; that he was arrested by the Norfolk police and charged as set forth in finding 2, supra.[8]
*43 4. On September 30, 1955, plaintiff was examined by tbe Base Psychiatrist at the U.S. Naval Amphibious Base, Little Creek, Norfolk, Virginia, who submitted a memorandum dated October 4, 1955, which reads in relevant part:
4. Middleton’s account of the events of 18 September 1955 as related to the examining psychiatrist is as follows : After taking two friends to a bus station, Middleton met a stranger, a civilian who in the course of their conversation offered Middleton a drink from the bottle of liquor in his car. After having entered the civilian’s car, and having drunk some of the liquor, Middleton stepped out to urinate. At that time he noted the police nearby, told the other man, who then stepped out of the car to place the bottle of liquor under the car seat. It was at this time, according to Middleton that the police noticed him and his companion and assumed they were engaged in a homosexual act. Middleton states that he signed the statement admitting the offense rather than go through an investigation and court martial.
5. Middleton denies having engaged in homosexual behavior on 18 September 1955, or at any other time in his life. He denies ever having had any homosexual desires.
* * # * *
7. In summary, Middleton has the kind of personal^ pattern consistent with either (a) impulsively indulging in socially unacceptable behavior, especially if instigated by someone else, and later feeling appropriate remorse or díame (which would explain his denial of his offense when talking to the psychiatrist); or, (b) having been falsely accused of an offense, impulsively confessing out of bitterness and resentment for authority — in this case the authority being the tj.s. Navy-
8. Psychiatric evaluation cannot definitely determine whether or not the alleged offense actually took place. However, in view of Middleton’s signed statement of 28 September 1955, he must be considered a class Two homosexual and, therefore, unfit for retention in the service of thexr.s. NAVT.
5. In accordance with the provisions of C. 10312, Bureau of Naval Personnel Manual, and Secretary of the Navy Instruction 1620.1, plaintiff was given an opportunity to submit his acceptance of an undesirable discharge in lieu of *44 general court-martial. He was shown a sample court-martial specification and charge (of sodomy) and was told that he would be court-martialed if he did not accept the undesirable discharge. On October 17, 1955, plaintiff, in writing, made a request for, and agreed to accept, an undesirable discharge “for the good of the service and to escape trial by general court-martial.”
6. (a) On October 18, 1955, the Commanding Officer Naval Amphibious Training Unit, Atlantic Fleet (plaintiff’s commanding officer), on the basis of plaintiff’s signed statement dated September 28, 1955,[9] the memorandum, dated October 4, 1955,[10] submitted by the base psychiatrist, plaintiff’s written acceptance of an undesirable discharge, dated October 17,1955,[11] recommended to the Chief of Naval Personnel that “for the good of the naval service,” plaintiff “be discharged under conditions other than honorable.” The Chief of Naval Personnel was informed about plaintiff’s trials in the Virginia civil courts. On October 28, 1955, the Chief of Naval Personnel issued a directive to the commanding officer of the plaintiff that he be discharged as “undesirable by reason of unfitness” in accordance with the provisions of “Sec. NAv INST. 1620.1,” which document, (dated 5 June 1953), reads in pertinent part:
subj : Procedure for the disposition of cases of homosexuality involving naval personnel:
1. Purpose. To promulgate a uniform procedure relative to the disposition of personnel in cases involving homosexual tendencies or acts-
* * * * *
4. Action
a. Known homosexual individuals are military liabilities and must be eliminated from the service. Commanding officers receiving information indicating that a person in the naval service possesses homosexual tendencies or has engaged in an act of homosexuality shall inquire thoroughly and comprehensively into the matter and ascertain all the facts and circumstances of the case, *45 bearing in mind the peculiar susceptibility of such cases to possible malicious charges.
* # iji * #
5. Classification and Procedures. Personnel coming within the purview of this directive fall into several categories which may or may not overlap and which will be more or less complicated by facts 'and circumstances peculiar to the individual case. These cases, however, are generally classified and the normal disposition for each class will be as follows:
❖ # $ ^ ❖
b. (1) Class II is defined as those cases wherein personnel, while in the naval service, have engaged in one or more homosexual acts or where evidence supports proposal or attempt to perform an act of homosexuality, and which do not fall in the category of Class I above.
(2) Disposition. Disposition will be accomplished by administrative separation under conditions other than honorable unless the individual resists separation from the service under such conditions, in which case he will be recommended for trial by court-martial. Detailed procedure follows:
(3) Sample charges and specifications for trial by general court-martial shall be drawn and the accused shall be confronted with them. He shall be offered the following alternatives:
* $ * $ $
(b) 1. Enlisted persons shall be informed that a signed statement in tenor as follows, will probably receive favorable action: “I hereby accept an undesirable discharge for the good of the service and to escape trial by general court-martial. I understand that my separation from the naval service effected by undesirable discharge will be under conditions other than honorable; that I may be deprived of virtually all rights as a veteran under both Federal and State legislation; and that I may expect to encounter substantial prejudice in civilian life in situations wherein the type of service rendered in any branch of the Armed Forces or the character of discharge received therefrom may have a bearing.”
2. If an accused enlisted person refused to sign a statement so worded, he shall be recommended for trial by general court-martial. Recommendations for trial shall *46 be prepared and to eral court-martial jurisdiction-
$ * $ $ *
(5) Tlie commanding officer shall submit to the Department a complete report of each class II offender who is afforded, and who elects, the alternative of resignation or undesirable discharge. In all cases the report should include: A full and complete statement from the officer or enlisted person concerned, or his statement to the effect that he does not desire to make a statement; statements of witnesses; copy of the sample general court-martial charge and specification (s); resignation of the officer or agreement by the enlisted person to accept an undesirable discharge as worded in paragraph 5b(3) above; and the commanding officer’s detailed comments and recommendations. The commanding officer’s report will include a psychiatric or medical evaluation of the person concerned.
(b) Paragraph 3 of the above-mentioned directive, issued by the Chief of Naval Personnel on October 28,1955, supra, reads:
‡ ^ ‡ ¥
3. The command effecting discharge shall show on the reverse side of the discharge certificate abreast the entry “Authority for Discharge” — this letter and Article C-10312, BuPers Manual.
Said article C-10312, provides in pertinent part:
(1) The Bureau may direct the discharge of an enlisted person for unfitness.
(2) Discharges by reason of unfitness for any cause, regardless of circumstances attending, will be effected only on instructions of the Chief of Naval Personnel. These instructions shall be requested without delay in order that undesirable enlisted personnel may not be retained in the service any longer than necessary. * * *
(3) An enlisted person will be recommended for discharge for reason of unfitness to free the service of persons who are useless, only after that person has already demonstrated total unfitness for further retention. In this category are :
(a) Persons who give evidence of habits or traits of character manifested in antisocial or antimoral trends, *47 criminalism, chronic alcoholism, drug addiction, pathological lying, or sexual perversion or misconduct.
jfc ❖ * ❖
(4) Before recommending such a discharge, a commanding officer shall investigate thoroughly each case. The circumstances, facts, and offenses shall be included in the recommendation. The person concerned shall be informed of the contemplated action, and the reasons therefor, and shall be given an opportunity to appear and present any facts or submit any signed statement in own behalf that he may desire.
* * # * *
(7) The commanding officer shall not recommend discharge for unfitness in lieu of punishment for an offense committed. After disciplinary action has been taken for an offense the commanding officer may recommend discharge for unfitness as a separate and distinct action based on the evidence listed m paragraph (3) of this article.
(c) Pursuant to the above-mentioned directive, plaintiff, on November 12, 1955, was given an undesirable discharge.
(d) Judicial notice is taken of SECNAVINST 5810.1 JAG :1:2CT :au, 5 March 1953, which provides in pertinent part:
Subj: Policy regarding trial by courts-martial of persons previously tried by civil courts for the same act or acts.
Kef :(a) CMO 5-1945,203.
1. Purpose. The purpose of this Instruction is to modify the policy set forth in reference (a) regarding trial by courts-martial of persons in the naval service who have previously been tried in civil courts for the same act or acts, and to provide procedures to be followed in carrying out the modified policy.
2. Modified Policy. A person in the naval service who has been tried in a State court, whether convicted or acquitted, shall not be tried by court-martial for the same act or acts except in those unusual cases where trial by court-martial is considered essential in the interests of justice, discipline, and proper administration within the naval service. Such unusual cases, however, shall not be referred to trial without first obtaining permission from the Secretary of the Navy. Bequests for *48 permission to refer such cases clude a full report of all the attendant circumstances and shall be forwarded to the Secretary via the officer having general court-martial authority over the command, and the Chief of Naval Personnel or the Commandant of the Marine Corps, as appropriate.
$ $ $ ‡ $
7. Subsequent to plaintiff’s discharge from the Navy on November 10, 1955, he filed an application with the Board for Correction of Naval Records (hereinafter referred to as the “Board”), in which he requested a remission of his undesirable discharge, and either reinstatement in the United States Navy in his rating of chief boatswain’s mate or an opportunity to re-enlist in that grade. A hearing on that application was held by the Board on November 18, 1957, at which time plaintiff appeared in person, testified, and he was represented by counsel. After hearing plaintiff’s testimony and considering documentary evidence, consisting of plaintiff’s application, naval records, related correspondence, and applicable regulations and policies, the Board concluded its deliberations on December 2,1957. Thereafter, on January 16, 1958, the chairman of the Board, on behalf of the Board, submitted to the Secretary of the Navy, a report of the Board’s findings, decision, and recommendation. In addition to containing a summary of the facts and circumstances surrounding plaintiff’s discharge, including the substance of the statement signed by plaintiff on September 28, 1955,[12] and the report of the examination made of plaintiff by the base psychiatrist on September 30, 1955,[13] the Board’s report reads in pertinent part:
% £ Hi ❖
b. That a review of Petitioner’s naval records discloses that he was born on 12 November 1918 and he enlisted in the U.S. Navy on 30 August 1940 for six years. He was a member of the crew of the tr.s.s. pigeon (ase 6) when that vessel was sunk at Corregidor in the Philippines on or about 4 May 1942. He was taken as a prisoner of war on 6 May 1942 and was liberated on 12 September 1945. His service record shows that two *49 Presidential citations were awarded by the Secretary of the Navy to the officers and crew of the u.s.s. pigeoN during the month of December 1941; also, Petitioner was considered eligible to wear the Army Distinguished Unit Badge, with Oak Leaf Cluster, the Asiatic-Pacific Area Ribbon with one star, the American Area Ribbon, the American Defense Service Ribbon with one star, and the Philippine Defense Ribbon with one star. He received an Honorable Discharge on 3 June 1946 in the rating of Chief Boatswain’s Mate (Permanent Appointment.)
c. That he reenlisted for two years on 4 June 1946 and was issued an Honorable Discharge on 30 November 1947.
d. That he reenlisted for four years on 1 December 1947 and received an Honorable Discharge on 22 February 1952.
e. That he reenlisted in the rating of bmc on 23 February 1952 for a period of six years. Oh 8 May 1952 he was tried by Summary Court-Martial for a violation of Article 86, UCMJ: absence over leave for about 19% hours, from 0100 until 2025 on 3 May 1952. He pleaded guilty and was sentenced to forfeit $11. On 8 June 1953 he was transferred from the u.s.s. mauky (ags-16) to the Naval Amphibious Base, Little Creek, Norfolk, Virginia.
*****
j. That in connection with the petition for a correction of his record, Petitioner has submitted the results of a lie detector test. The letter from an examiner of the National Lie Detection Laboratories, dated 15 February 1956, is contained in enclosure (2). The summary of the examiner reads as follows:
It is the opinion of this examiner, that in all probability, this subject did not reach the stage where an actual act of perversion had been committed. It is probably true, according to his responses that he suspected that the [civilian] was a pervert. However, the subject had been drinking and in all probability had he been sober he. would never have gone as far as he did in getting into the car with the suspect. It is particularly pointed out that this subject reacts only to the question of having been drinking, and at no time is there any specific reaction to the questions of his joining in a perverted act.
*50 k. That after a careful review of the evidence of record, this Board now finds that the issuance of an Undesirable Discharge was not justified under the circumstances of this case, and that a correction of this discharge is warranted. In so finding, the Board is cognizant of the fact that Petitioner on 28 September 1955 admitted participating as a passive partner in an act of oral co-ition. Opposed to this fact is Petitioner’s denial to a Navy psychiatrist just two days later that any such act took place. The psychiatrist found no evidence of the personality structure of a sexual invert, but considered Petitioner a Class Two offender only on the basis of his previous admission of guilt in his signed statement of 28 September 1955, which he subsequently denied. The Board also notes that Petitioner had been convicted hi a civil court at the time of his signing the statement admitting his guilt and at the time he talked to the psychiatrist ; yet his conviction had been reversed oh appeal by the time his Commanding Officer recommended him for an Undesirable Discharge. The Board finds that such a discharge was improper in view of the psychiatrist’s findings coupled with the acquittal in the civil court on appeal. In addition, the Board carefully noted Petitioner’s demeanor in testifying under oath to the effect that he had not participated in an unnatural act. Also, it was felt that some credence should be given to the results of the lie detector test which indicate that in all probability no actual act of perversion was ever committed. As a further basis for finding that the Undesirable Discharge was not appropriate under the circumstances, the Board notes that Petitioner had rendered over fifteen years of honorable service, including spending over three years as a prisoner of war during World War II. Proof of Petitioner’s good character and reputation is contained in the several character references contained in enclosure (2).
After finding that a correction of the discharge is warranted, the Board finds as an additional matter that his final average marks were 3.785 in proficiency and in leadership, and 3.821 in conduct. Accordingly, the Board finds that an Honorable Discharge is now warranted.
With regard to Petitioner’s request for reinstatement or an opportunity for reenlistment in his old rating, the Board finds no basis for recommending favorable action. The Board finds that Petitioner should submit his request for authorization to reenlist to the Chief of Naval Personnel.
*51 DECISION:
It is the decision of this Board that Petitioner’s Undesirable Discharge be changed to an Honorable Discharge, and that the Chief of Naval Personnel be directed to make this change by issuing Petitioner a certificate of Honorable Discharge by reason of BuPers Manual, Article C-10306, in lieu of the certificate previously issued.
RE COMMENDATION :
It is recommended that the Department of the Navy pay to Petitioner or other proper party or parties as a result of the foregoing correction of naval record, all monies lawfully found to be due from the Department of the Navy.
8. (a) On March 18, 1958, the Assistant Secretary of the Navy (Personnel and Reserve Forces) sent a communication to the chairman of the Board for the Correction of Naval Records which reads in pertinent part:
Subj: middletoN, William J., 346 84 35, ex-BMC, ttsn
1. In the case of subject-named man, only so much of the decision of the Board for Correction of Naval Records dated 16 January 1958, as would change middle-ton’s Undesirable Discharge to a General Discharge for unsuitability, is approved.
(b) On April 1, 1958, the plaintiff was notified, through his attorney, of the action of the Board for the Correction of Naval Records, as approved by the Assistant Secretary of the Navy.
9. As a result of the action of the Board for Correction of Naval Records, as approved by the Assistant Secretary of the Navy, plaintiff submitted a military pay and allowance claims voucher in the total sum of $733.61. On September 5, 1958, a certification voucher was issued which reads in pertinent part:
MIDDLETON, WILLIAM J.
The following pay and allowances for the above-named individual have been found due and payable because of correction of naval records * * *.
*52 Amount due:
Mileage allowance 11/10/55, Norfolk, Yirginia to Kansas City, Missouri, 1,307 miles at $0.06 per mile- $78.42
Less Discharge Gratuity- 23.41 $55. 01
lsi, 11/10/55, (60 das) bpo $280.80 per mo_ 561.60
lsl 11/10/55, (60 das) allow $1.95 per da-117.00
733. 61
Less: Withholding Tax ($561.60 at 18%)-101.09 $632.52
Appropriation Chargeable dod 9790102 (45)_$733.61
Appropriation Creditable 17F0101 WPTN_ 101. 09
Plaintiff was paid through the Navy Finance Center, the sum of $632.52, by check, which was cashed by him.
10. Plaintiff in this cause of action claims the active duty pay and allowances of a chief boatswain’s mate, credited with his length of service for the period from November 10, 1955, to the date when his then current term of enlistment would normally have expired, the amount of the claim being subject to computation by the General Accounting Office, and determination under Rule 47(c) of this court.
CONCLUSION OF LAW
Upon the foregoing findings of fact which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover and judgment is entered to that effect. The amount of recovery will be determined pursuant to Rule 47(c).

 In Navy parlance, “Class II is defined as those eases wherein personnel, while in the naval service, have engaged in one or more homosexual acts or where evidence supports proposal or attempt to perform an act of homosexuality, and which do not fall in the category of Class I [aggressive or dangerous homosexuality] * * sec. nav inst. 1620.1(5).

 We base this finding on (a) plaintiff’s sworn testimony, in 1957, before the Board for Correction of Naval Records that he was threatened with a court-martial if he did not confess, (b) plaintiff’s signed statement of October 17, 1955, that he accepted an undesirable discharge “for the good of the service and to escape trial by general court-martial" (emphasis added), (c) the transmittal by plaintiff’s commanding officer, to the Bureau of Naval Personnel, of a “sample” general court-martial charge and specification accusing plaintiff of sodomy with a named civilian on September 18, 1955 ; and (d) the provision in sec. nav inst. 1620.1 (finding 6), that “sample charges and specifications for trial by general court-martial shall be drawn and the accused shall be confronted with them,” and offered the alternate of accepting an undesirable discharge or of undergoing court-martial.

 The Board rejected plaintiff’s request for reinstatement or for an opportunity to re-enlist, holding that the request should be submitted to the Chief of Naval Personnel. Plaintiff does not challenge that ruling.

 Plaintiff was thereupon given the pay and allowances, up to November 12, 1955, he had lost by reason of the original character of his discharge.

 The command in the special instruction on homosexuality ( sec. nav inst. 1620.1, supra) to court-martial men who refused to take an undesirable discharge must be interpreted, in the light of sec. nav inst. 5810.1, supra, as applicable in full force only to those who had not been tried by a civil court for the homosexual act.

 under sec. nav inst. 1620.1, an administrative discharge could be accomplished only if the individual agreed to a separation under conditions other than honorable. The Bureau of Naval Personnel specifically acted under that instruction in ordering plaintiff’s discharge.

 Plaintiff’s signed statement was received in evidence as Joint Exhibit 1(g), and by this reference is incorporated herein.

 See finding’ 3, supra.

 See finding 4, supra.

 See finding 5, supra.

 See finding 3, supra.

 See finding 4, supra.