Pee Curiam :
This case was referred to Trial Commissioner Bichard Arens with, directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on December 16, 1965. Exceptions to the commissioner’s findings and recommendation for conclusions of law were filed by the defendant. The plaintiff requested the court to adopt the report of the commissioner including his conclusions of law and findings of fact. The case was submitted to the court on the briefs of the parties and oral argument of counsel. Since the court is in agreement with the opinion and recommendation of the trial commissioner with minor changes therein, it hereby adopts the same, as modified, as the basis for its judgment in *520 this case, as hereinafter set forth. Plaintiff is, therefore, entitled to recover and judgment is entered for plaintiff with the amount of recovery to be determined pursuant to Buie 47(c).
OPINION OP COMMISSIONER*
Arens, Commissioner: After 24 years’ active duty in the military service during which he received a number of awards for distinguished service, plaintiff, then a major in the U.S. Air Force, was discharged under other-than-honorable conditions in February 1962. The discharge arose out of an incident which occurred one afternoon in November 1961, when plaintiff, while stationed at Mountain Home Air Force Base, Idaho, took his young son and his son’s playmate, an 8-year-old girl, to a movie at the base theatre. The girl’s father, another officer at the base, subsequently reported to the Office of Special Investigations of the Air Force that she had returned from the movie in a highly emotional state and complained that her private parts hurt. She later confided to her mother that while she sat next to plaintiff at the movie he “unzipped her slacks and got inside” and fondled her. A physical examination by the base pediatrician revealed that the child had not been physically harmed.
Plaintiff signed a sworn statement, after interrogation, in which he stated that he was a very affectionate person and that during the course of the movie he “probably did squeeze, pinch, and pat [the girl] in a manner that would exceed normal propriety”; but denied that he meant to do harm to the girl.
For the next few days, plaintiff was voluntarily hospitalized for the purpose of psychiatric evaluation. He was diagnosed as a moderate, chronic sexual deviate. During the period of his hospitalization and “while feeling was running rather high on the base,” plaintiff was called into the office of the commander who read aloud court-martial charges, charging him with taking indecent liberties with a female under 16 years of age. The commander informed plaintiff that there was a possibility that higher headquarters would *521 allow him to resign in lieu of a court-martial and that he (the commander) would so recommend; that the resignation, if accepted, would undoubtedly result in a discharge under other-than-honorable conditions and adversely affect his veteran’s rights; that for plaintiff’s own protection, and that of his family, it would probably be the best thing for him to resign, but that he should not rush into it; and that the service of a base legal officer would be available for plaintiff. The commander then offered plaintiff a 30 days’ leave in order to move his family off the base. Plaintiff responded, in substance, that he would prefer to resign rather than to go through a court-martial. Plaintiff did not submit his resignation at that time, nor was anything said respecting an application by plaintiff for retirement.
The next day, plaintiff left the base with his family and drove to California. It was understood that he was to be called by a base officer after he had settled his family. He did not confer with military or civilian counsel until after his discharge. Shortly after plaintiff left the base, the personnel officer advised the vice commander that, based upon his years of service, plaintiff was eligible for retirement and “that it was only right that plaintiff be presented with the opportunity to retire if his resignation was not accepted.” The subject was then discussed with the Staff of the 15th Air Force who agreed that both a resignation and an application for retirement would be prepared and sent to plaintiff for his signature as a “package deal” for submission to the Air Force.
A few days later, the vice commander, who had known plaintiff favorably in the service for some years and who was plaintiff’s trusted friend, telephoned plaintiff, who was then in California, and told him that both a resignation for the good of the service and an application for voluntary retirement were being sent to him; that the best course of action would be for plaintiff to submit a package deal consisting of both documents; that the resignation would take care of dropping the court-martial proceedings; and that, based upon plaintiff’s past record, he (the vice commander) thought that plaintiff had a good chance for retirement. It was the vice commander’s opinion at the time that a court-martial would convict plaintiff if he should stand trial.
*522 Plaintiff was not familiar with the applicable regulations. Although he wished to avoid a court-martial, his main objective, known by the vice commander at the time, was to procure his retirement benefits. On the basis of the telephone conversation, he concluded that he would avoid a court-martial and would receive his retirement benefits in the package deal. He accordingly signed and returned both documents to the base. The resignation form stated that if the resignation is accepted plaintiff understood that he might be discharged under other-than-honorable conditions and might be deprived of rights and benefits under laws administered by the Veterans Administration. The Veterans Administration does not administer retirement benefits.
Counsel for the parties agree that, under the applicable regulations, the Air Force could not have approved both plaintiff’s resignation and his application for retirement. It is clear, however, that plaintiff was under the impression, induced by the vice commander, that plaintiff’s resignation would first be accepted and thus “take care of dropping the court-martial proceedings,” and then plaintiff would have a “good chance” for retirement; in other words, that both the resignation and application for retirement could be accepted by the Air Force.
The Air Force regulations provide for resignation in lieu of court-martial, but there is no regulation providing for retirement in lieu of court-martial.
Upon receipt of plaintiff’s resignation and application for retirement, the wing commander appended to the resignation his recommendation that the resignation be approved, “since [plaintiff] is requesting resignation in lieu of trial by court-martial,” but recommended that the resignation be disregarded, provided the application for retirement was approved. The wing commander appended to the application for retirement his recommendation for approval, provided that the resignation was disapproved.
The resignation, application for retirement, the commander’s recommendations, the charge sheet, the statement which plaintiff had signed after interrogation by a special agent of the Office of Special Investigations, and a legal summary of the case were then sent to the Strategic Air Command at *523 Ornaba, Nebraska, where tbe vice commander-in-chief recommended to the Headquarters of the Air Force that plaintiff’s tender of resignation be accepted and that his application for voluntary retirement be disapproved. Thereafter, the Secretary of the Air Force, upon recommendation of the Air Force Personnel Board, accepted plaintiff’s resignation for the good of the service, directed that he be issued a discharge certificate under other-than-honorable conditions, and disapproved his application for voluntary retirement. Plaintiff was accordingly discharged on February 5, 1962, and did not receive retirement benefits.
Plaintiff applied to the Air Force Board for the Correction of Military Kecords to correct his military records to show that he had not resigned or been discharged from the military service. He requested that his resignation and discharge be voided, his commission restored, and that he be returned to active-duty status. In his application, plaintiff stated that his resignation was obtained by means of improper advice and influence, and without legal advice at a time when he was emotionally upset; that his conduct which preceded this action was not of a serious nature; that it was misconstrued; and that it did not warrant his elimination from the service.
As a prerequisite to the consideration of plaintiff’s application by the Air Force Board for the Correction of Military Records, the Air Force Discharge Review Board reviewed plaintiff’s case. Plaintiff appeared with his counsel and testified. The Discharge Review Board concluded that the type of discharge given plaintiff was equitable and proper.
Thereafter, a hearing was held by the Air Force Board for the Correction of Military Records. After plaintiff appeared with his counsel and testified, the proceedings were closed; but, without notifying plaintiff or his counsel, and in their absence, the Board reconvened and heard the testimony of the vice commander. The Board concluded that plaintiff’s application should be denied and this action was then approved by the Assistant Secretary of the Air Force.
After plaintiff filed his petition in this court, the Air Force wrote to plaintiff’s counsel that, in view of the alleged irregularity in the proceedings of the Board for the Correction of Military Records, if he should request a reconsideration of *524 the case, the Board would, in substance, consider the case entirely on a newly presented record; but, plaintiff’s counsel refused to request a reconsideration. During the trial of the case in this court, defendant’s counsel stated in effect that it was “error” for the Board to conduct the reconvened session without notifying plaintiff or his counsel, that plaintiff had grounds to claim that he did not have a fair hearing before the Board, and that the reconvened session was in violation of the regulations of the Air Force. It was the position of defendant’s counsel, however, that the Board is not a part of the discharge procedure which had been completed in the case, but that the Board acts only “as a matter of grace,” and, hence, its error was not fatal to the proceedings of plaintiff’s discharge.
Before resolving the legal question presented in regard to the resignation and application for retirement which plaintiff signed, it would be well to make an assessment of the facts. At first glance, it might appear that (1) plaintiff was offered the services of a base legal officer to advise Mm of his rights and (2) no conscious undue influence or duress was exercised on Mm to sign the documents presented; and, hence, he must accept the results, namely, the discharge under other-than-honorable conditions and the loss of retirement benefits. Perhaps in the market place where people deal knowingly at arms’ length such a result would follow. In this case, however, we observe a situation where a military man, under military discipline, was confronted by his commander and then his vice commander whom he has been taught to trust and obey and who presumably in matters witlfin their province had a superior knowledge. “WMle feeling was running rather high on the base,” plaintiff could hardly be expected to accept the commander’s offer for him to confer with a base legal officer concerning his rights, especially in view of plaintiff’s prompt departure from the base in accordance with the commander’s suggestion. Although the commander had informed plaintiff that his resignation, if accepted, would undoubtedly result in a discharge under other-than-honorable conditions, nothing was finalized at the conference with the commander. Plaintiff merely indicated that he would prefer to resign rather than *525 to go through a court-martial. Nothing was said in the conference respecting an application by plaintiff for retirement.
We come then to the telephone conversation in which the vice commander, whom plaintiff trusted not only as a superior officer but as a friend, recommended the “package deal.” It is apparent that plaintiff was induced by the vice commander to believe that his resignation would first be accepted and thus “take care of dropping the court-martial proceedings” and that thereafter plaintiff would have a good chance for retirement. It is clear that the resignation and not the application for retirement was the device by which it was contemplated that the court-martial proceedings would be dropped. The wing commander’s endorsement on the resignation referred to the fact that plaintiff was requesting resignation in lieu of trial by court-martial. No such endorsement was made on plaintiff’s application for retirement, nor could it have been properly made because the regulations do not provide for a retirement in lieu of court-martial. When the wing commander endorsed the resignation and the application for retirement he must have realized that the two documents could not both be approved by the Air Force, but apparently he was under a misapprehension that plaintiff’s application for retirement could be accepted in lieu of a court-martial. It is obvious that when plaintiff signed and returned the resignation and the application for retirement he did not have “a good chance” for retirement which the vice commander knew was plaintiff’s main objective since it was highly improbable that the Secretary would reject the resignation and grant retirement. The fact of the matter is that upon acceptance of plaintiff’s resignation his application for retirement could not have been accepted by the Air Force and, accordingly, he had no chance for retirement benefits. The good faith of the vice commander did not erase the effect of his statements to plaintiff. In fact, his sincerity and kindliness toward plaintiff could only have added weight to his words.
In the recent case of Middleton v. United States, 170 Ct. Cl. 36 (1965), the court was confronted with a somewhat similar factual situation in which the plaintiff signed a *526 form statement requesting and agreeing to accept an undesirable discharge from the Navy “for the good of the service and to escape trial by general court-martial.” Under a directive of the Secretary of the Navy, a person in the plaintiff’s situation could be tried by a military tribunal only if his case was an “unusual” one in which the Secretary determined that a military trial was “essential in the interests of justice, discipline, and proper administration.” The plaintiff was not told of the directive but was actively misinformed by Navy investigators and officials that he would be court-martialed unless he accepted the less-than-honorable certificate. This court, citing Clackum v. United States, 148 Ct. Cl. 404, 406-408, 296 F. 2d 226, 227-228 (1960), held that the plaintiff was denied due process and fair treatment by being faced with a harsh and disagreeable option which simply did not exist under Navy law; that, in either formulation, the necessary consequence of the wrongful predicament into which the Navy thrust him was to vitiate his acceptance of the lower-grade discharge; and that, since plaintiff’s invalid acceptance of the discharge, in turn, was the necessary basis for his early administrative release from the Navy, the entire discharge was void and the plaintiff was never validly separated from the Navy during his enlistment. The court pointed to the line of cases holding that a discharge issued in violation of regulations is a nullity, and the cases which have established the doctrine that not merely the character of the discharge but the fact of discharge is voided by the failure to accord the serviceman his material rights or to follow the required procedures.
Although the facts in the instant case have shades of difference from the facts in Middleton, supra, the central theme is identical, namely, that the serviceman in each case made a choice of options which he had on the basis of misinformation from his superiors. In the case at bar, plaintiff was told that if he signed up on the package deal he would have a good chance for retirement benefits, which he did not in fact have. In Middleton, the plaintiff was told that he would be court-martialed unless he accepted the less-than-honorable certificate, but under the Secretary’s instructions he would not have necessarily been court-martialed. This parallel in cen *527 tral theme requires an identical result, namely, to vitiate the action taken (plaintiff’s resignation and discharge). Plaintiff is therefore entitled to recover his pay and allowances from February 6,1962, to date of judgment.
Having reached this conclusion, it is unnecessary for a decision in the case to consider the other principal issue, namely, the effect of the failure of the Board for the Correction of Military Records to notify plaintiff or his counsel of the reconvened session, which defendant’s counsel stated, in effect, was “error” and in violation of the regulations of the Air Force, but was not fatal to the proceedings.
FxNdikgs OK Fact
1. (a) Plaintiff, a citizen and resident of California, was born in Louisiana on November 2,1918.
(b) After attaining the education level of a high school graduate, plaintiff on:
(1) July 6, 1937, enlisted in the U.S. Marine Corps and served therein until his honorable discharge therefrom on August 5,1941, in the grade of sergeant;
(2) October 4,1941, enlisted in the U.S. Army Air Corps and served therein until he was honorably discharged therefrom, for the convenience of the Government, on June 23, 1943, to accept a commission as an aviation cadet in the grade of second lieutenant;
(3) June 24, 1943, entered upon extended active duty in the grade of aviation cadet and served honorably as a commissioned officer until his release from extended active duty, in the grade of first lieutenant, on February 22,1946 ;
(4) May 17, 1946, enlisted in the U.S. Army Air Corps in the grade of master sergeant and served in that capacity until March 9, 1952, when he was honorably discharged for the convenience of the Government for recall to active duty as a commissioned officer; and on
(5) March 10,1952, entered upon extended active duty in the U.S. Air Force in the grade of first lieutenant, and served continuously as a commissioned officer until his discharge under other-than-honorable conditions on February 5, 1962, at which time he had been promoted to the grade of major.
*528 2. (a) While serving on active duty as a lieutenant, plaintiff participated in the China-Burma-India and Mariannas campaigns. As a flight engineer on a B-29 aircraft, he flew 20 combat missions of 250 combat hours in India, China, and Japan. He was awarded the Distinguished Flying Cross, the Soldiers Medal, the Good Conduct Medal, the Air Medal with 4 Oak Leaf Clusters, the National Defense Service Medal, the Asiatic-Pacific Campaign Service Medal, the American Defense Medal, the Distinguished Unit Citation, the World War II Victory Medal, and the Air Force Longevity Service Award with 4 Oak Leaf Clusters.
(b) During his active duty as an officer, he served as a line officer in a technical field and at no time served as a commander, or in the administrative or personnel field.
(c) At the time of his separation from the military service, he had served on active duty for a period of 14 years, 2 months, and 7 days as an enlisted man, and a period of over 10 years as an officer, for a combined total period of active duty in excess of 24 years.
3. (a) In this action, plaintiff seeks in effect to vitiate his resignation and discharge under other-than-honorable conditions, arising out of an incident concerning which he was charged by his commanding officer with a violation of the Uniform Code of Military Justice, in that he allegedly took indecent liberties with a female under 16 years of age.
(b) Plaintiff claims active-duty pay and allowances from February 5,1962, the date of his discharge. The trial of the case was limited under Pule 47 (c) to the issues of law and fact relating to the right of plaintiff to recover, reserving the determination of the amount of recovery, if any, for further proceedings.
4. (a) On the afternoon of Saturday, November 25,1961, plaintiff, while stationed at Mountain Home Air Force Base, Idaho, took his young son and his son’s playmate, an 8-year-old girl, to a movie at the base theatre. Prior to the start of the movie, plaintiff’s son recognized a friend in another row of seats and moved there to join him. The girl remained seated next to plaintiff who put his arm around her.
(b) The girl’s father, another officer at the base, subsequently reported to the Office of Special Investigations of *529 the Air Force that she had returned from the movie in a highly emotional state and complained that her private parts hurt and that she could not urinate. She later confided to her mother that plaintiff had “unzipped her slacks and got inside” and fondled her. A physical examination by the base pediatrician revealed no penetration had been made with any instrument, and that the child had not been physically harmed.
5. (a) On Sunday, November 26, 1961, plaintiff signed a sworn statement, after interrogation by a special agent of the Office of Special Investigations, reading in part:
*****
I am a very affectionate person, and during the course of the movie I probably did squeeze, pinch, and pat [the girl] in a manner that would exceed normal propriety. I’m sorry that this was interpreted that I meant to do harm to this girl.
In spite of the security restrictions imposed upon information concerning cases such as this; guilty or not, I feel that the charge has destroyed, at least partially, my effectiveness as an officer at this station.
I request that I be given a psychiatric examination as soon as practical. I hope it will be of some assistance in this case.
(b) From November 26 until November 29,1961, plaintiff was hospitalized at the base for the purpose of psychiatric evaluation. The diagnosis at the time was: sexual deviate, pedophilia, moderate, chronic, manifested by wanting to molest young children, due to unknown reasons, moderate stress, moderate predisposition, moderate impairment. Plaintiff testified at the trial that the doctor at the base hospital told him, “There’s nothing much wrong with you. You need a little psychiatric treatment. You have a slight disorder here. * * * Oh, something that would probably take a once-a-week session for six months ought to clear you up okay.”
6. (a) On Monday, November 27, 1961, Colonel Walter Lucas, who was wing commander at Mountain Home Air Force Base, signed Charges and Specifications in which plain *530 tiff was charged with taking indecent liberties with, a female under 16 years of age.
(b) Mountain Home Air Force Base did not have general court-martial jurisdiction. Colonel Lucas was advised by the staff judge advocate that it would be possible for plaintiff to resign for the good of the service in lieu of court-martial, if the resignation were approved by the general court-martial authority.
7. (a) On Tuesday, November 28,1961, while “feeling was running rather high on the base” against plaintiff, he was called into the office of Colonel Lucas, the wing commander, who, in the presence of other officers, including the staff judge advocate, read aloud the Charges and Specifications against plaintiff. Colonel Lucas then informed plaintiff that there was a possibility that higher headquarters would allow him to resign in lieu of a court-martial and that he (Colonel Lucas) would so recommend to the 15th Air Force, the next higher authority; that the resignation, if accepted, would undoubtedly result in a discharge under other-than-honorable conditions and adversely affect plaintiff’s veteran’s rights; that for plaintiff’s own protection and that of his family it would probably be the best thing for him to resign, but that he should not rush into it; and that the service of a base legal officer would be available for plaintiff. Colonel Lucas then offered plaintiff a 30 days’ leave in order to move his family off the base.
(b) Nothing was said at that time in the office of Colonel Lucas respecting an application by plaintiff for retirement.
(c) At the trial in this court, there was a direct conflict in testimony regarding plaintiff’s response to the suggestion made to him by Colonel Lucas that he resign. A fair appraisal of the response is that plaintiff indicated that he would prefer to resign rather than to go through a court-martial.
8. (a) On Wednesday, November 29, 1961, plaintiff left the base with his family and drove to California. It was understood that plaintiff was to be called by a base officer after he had settled his family in California.
(b) Plaintiff did not confer with a base legal officer or with private counsel, nor did plaintiff discuss with any officer at the base whether or not he could retire in lieu of resigning.
*531 (c) Some few days after plaintiff left tbe base, tbe personnel officer advised Colonel Robert Blau, tbe wing vice commander at tbe base, that, based upon bis years of service, plaintiff was eligible for retirement and that “it was only right that plaintiff be presented with the opportunity to retire if bis resignation was not accepted.” Colonel Blau, who had known plaintiff favorably in the service for some years and who bad been present in tbe office of Colonel Lucas on November 28,1961, when tbe Charges and Specifications were read, told Colonel Lucas that plaintiff was eligible for retirement. Tbe subject was then discussed by a base officer with tbe Staff of the 15th Air Force who agreed that both a resignation and an application for retirement would be prepared and sent to plaintiff for bis signature as a “package deal” for submission to the Air Force.
9. (a) During tbe first week of December 1961, Colonel Blau telephoned from tbe 'base to plaintiff, who was then on leave in California, and told him that both a resignation and an application for retirement were being sent to him; that the best course of action would be for plaintiff to submit a package deal consisting of both documents; that the resignation would take care of dropping the court-martial proceedings ; and that, based upon plaintiff’s past record, he (Colonel Blau) felt that plaintiff had a good chance for retirement.
(b) Plaintiff was not familiar with the applicable regulations relating to either a resignation or retirement. On the basis of the telephone conversation with Colonel Blau, whom plaintiff trusted and on whom he relied, plaintiff concluded that he would avoid a court-martial and would receive his retirement benefits in the package deal by signing the two documents. He accordingly signed both the resignation and the application for voluntary retirement a few days later when they arrived in California, and sent them back to the chief of personnel at Mountain Home Air Force Base.
(c) Colonel Blau subsequently testified before the Air Force Board for the Correction of Military Records that, at the time of the above telephone conversation, plaintiff’s “main objective” was his retirement and that he (Colonel Blau) thought that plaintiff “would have a good chance for retirement, with his record”; but, that he thought “definitely, *532 a court [martial] would have convicted Mm.” There is no question but that Colonel Blau acted in good faith. He was not only a superior officer of plaintiff but was plaintiff’s trusted friend and sympathetic to him.
10. (a) The Air Force Regulations provide for resignation in lieu of court-martial; but, there is no regulation providing for retirement in lieu of court-martial.
(b) At the time plaintiff submitted his resignation and application for retirement, he did not have a “good chance” for retirement benefits but had instead only a very slight chance, if any.
11. (a) The body of the resignation, dated December 1, 1961, which plaintiff signed, reads:
1. I, JOHN C SULLIYAN, Major, 52721A, under the provisions of paragraph 20, AFR 36-12, hereby voluntarily tender my resignation from all appointments held by me at this time. I fully understand that if this resignation is accepted I may be discharged under other than honorable conditions from all appointments held by me.
2. The reason for the submission of this resignation is : I am tendering my resignation for the good of the service in accordance with paragraph 20b, AFR. 36-12.
3. I understand that I will not be entitled to mustering-out pay or settlement for accrued leave.
4. I understand that if I am discharged under other than honorable conditions as a result of acceptance of this resignation, I may be deprived of many rights and benefits under laws administered by the Veterans Administration.
5. I am not accountable or responsible for public property or funds.
6. I have been afforded the opportunity of consulting legal counsel regarding the advisability of submitting this resignation.
(b) There was appended to the foregoing resignation a statement, signed by Colonel Lucas, the wing commander, which reads in part:
1. Recommend that the resignation be approved, since officer is requesting resignation in lieu of trial by Court Martial. Recommend that this Resignation Applica *533 tion be disregarded provided that the Retirement Application, which was simultaneously submitted, is approved.
2.Major John C Sullivan, 52721A:
a. Is not under investigation.
b. Is under charges (Officer has submitted Application for Retirement simultaneously with this Application for Resignation).
* * * * *
5. Officer has been afforded the opportunity of consulting legal counsel.
6. Court-martial charges have been preferred. Attached hereto is a copy of the charges and all other information or evidence pertinent to the case.
% # % H* $
(c) The application for voluntary retirement, dated December 1,1961, which plaintiff signed, reads in part:
1. Under the provisions of paragraph 49, AFM 35-7, request I be retired on 31 Dec 61, or the earliest practicable date thereafter.
2. My present assignment is: Headquarters Squadron Section, 9th Bomb Wing (M), SAC, Mountain Home Air Force Base, Idaho.
3. My mailing address upon retirement and until further notice will be: 201 Prospect Drive, San Rafael, Calif.
4. I do not hold a valid appointment as a Reserve commissioned officer of the Air Force.
5. I understand that my retirement, if approved, will be effected at Mountain Home AFB, Idaho on date of retirement.
$ ‡ ‡ ‡
(d) There was appended to the foregoing application for voluntary retirement a statement, signed by Colonel Lucas, which reads in part:
1. Recommend that the application for retirement be approved, provided that officer’s Application for Resignation is disapproved.
2. Major John C Sullivan, 52721A: *****
d. Is under charges (Officer has submitted application for Resignation Under the Provisions of paragraph 20, AFR 36-12, in lieu of Court-martial, simultaneously, with this Retirement Application).
*534 e. Is not awaiting trial by court-martial, or the result of trial.
*****
(e) Air Force Manual on Retirement, AFM 35-7, dated July 1, 1960, paragraph 64 provides that endorsing commanders or their designated representatives will personally recommend by endorsement approval or disapproval of each request for retirement.
(f) Plaintiff’s resignation and his application for voluntary retirement, together with the appended statements of Colonel Lucas, were sent by Mountain Home Air Force Base to the Strategic Air Command at Omaha, Nebraska. There were attached to the statements, the charge sheet, the statement which plaintiff had signed after interrogation by a special agent of the Office of Special Investigations, and a legal summary of the case.
12. (a) On December 15, 1961, the vice commander-in-chief of the Strategic Air Command recommended to the Headquarters of the Air Force that plaintiff’s tender of resignation be accepted and that his application for voluntary retirement be disapproved.
(b) On January 19, 1962, the Secretary of the Air Force, upon recommendation of the Air Force Personnel Board, accepted plaintiff’s resignation for the good of the service, directed that plaintiff be issued a Discharge Certificate under other-than-honorable conditions, and did not approve plaintiff’s application for voluntary retirement.
(c) Effective February 5, 1962, plaintiff was discharged under other-than-honorable conditions.
(d) Counsel for the parties are agreed that under the applicable regulations the Air Force could not have approved both plaintiff’s resignation and his application for retirement.
13. (a) On March 21, 1962, plaintiff made application to the Air Force Board for the Correction of Military Records to correct his military records to show that he had not resigned or been discharged from the military service and that his active duty service in the grade of major had not been interrupted. He requested that his resignation and discharge be voided, his commission restored, and that he be returned to active duty status. In his application, plaintiff *535 stated that his resignation, was obtained ‘by means of improper advice and influence and without legal advice at a time when he was emotionally upset; that his conduct which preceded this action was not of a serious nature; that it was misconstrued; and that it did not warrant his elimination from the service.
(b)On June 18, 1962, as a prerequisite to the consideration of plaintiff’s application by the Air Force Board for the Correction of Military Records, the Air Force Discharge Review Board reviewed plaintiff’s case. Plaintiff appeared with his counsel and testified. The Discharge Review Board concluded that the type of discharge given plaintiff was equitable and proper, and denied his request for change in the type of discharge.
14. (a) On May 29, 1963, a hearing was held by the Air Force Board for the Correction of Military Records. After plaintiff appeared with his counsel and testified, the proceedings were closed.
(b) On June 5, 1963, without notifying plaintiff or his counsel, and in their absence, the Board reconvened and heard the testimony of Colonel Blau, the wing vice commander.
(c) Under date of October 14,1963, the Board concluded that plaintiff’s application should be denied.
(d) On October 16, 1963, the Assistant Secretary of the Air Force approved the recommendation of the Board and denied plaintiff’s application.
15. (a) On June 1,1964, after plaintiff’s petition was filed in this court, the Air Force wrote to plaintiff’s counsel as follows:
‡ $ $ $ $
One of the issues in your petition, paragraphs 16 and 17, relates to an alleged irregularity in connection with the proceedings conducted before the Air Force Board for the Correction of Military Records wherein the testimony of the Deputy Wing Commander was accepted by the Board without notice to or the knowledge or consent of the plaintiff, and without affording him cross-examination of this witness.
In fairness to both the plaintiff and the defendant, it would appear that before this case is to be considered by the Court of Claims there be afforded an opportunity to administratively correct this alleged irregularity.
*536 We have been authorized by the Air Force to advise you that if you should request a reconsideration of this case, the Board will then grant a full hearing, arrange to have the Deputy Wing Commander appear and testify and be subject to cross-examination, and would entertain a request to strike from the record of the previous Board proceedings all or any part of the testimony and exhibits previously adduced. The Board would then consider the case entirely on the record newly presented, which would include the testimony of the Wing Commander, any additional testimony or exhibits you might desire to introduce, and the testimony and exhibits before the previous Board proceedings not objected to as indicated above.
(b) By letter of July '6,1964, plaintiff’s counsel indicated his refusal to request a reconsideration of the case, as suggested in the above letter from the Air Force.
16. (a) Air Force Regulation No. 31-3, dated January 2, 1962, relating to the Air Force Board for Correction of Military Records, reads in pertinent parts:
$ ‡ ‡ ‡
Section D — Entitlement to Heaeing, Notice, Counsel, Witnesses, and Access to Recoeds
10. General. In each case in which a hearing is authorized, the applicant will be entitled to appear before the Board either in person or by counsel of his own selection or in person with counsel.
11. Notice:
a. To Applicant and Counsel. In each case in which a hearing is authorized, the Board will transmit to the applicant and counsel, if any, a written notice stating the time and place of hearing. The notice will be mailed to the applicant and counsel, if any, at least 80 days prior to the date of hearing, except that an earlier date may be set where the applicant waives his right to such notice in writing.
sgc ‡ ‡ $
Section E — Hearing
16. Conduct of Hearing:
a. By Chairman. The hearing shall be conducted by the chairman, and shall be subject to his rulings so as to insure a full and fair hearing. The Board shall not *537 be limited by legal rules of evidence but shall maintain reasonable bounds of competency, relevancy, and materiality.
íft *1» ‡ 4*
(b) During the trial of the case, defendant’s counsel stated, in substance, that it was “error” for the Board to conduct the session of June 5,1963, without notifying plaintiff or his counsel; that plaintiff had grounds to claim that he did not have a fair hearing before the Board; and that the session of June 5,1963, was in violation of the regulations of the Air Force governing the proceedings. It was the position of defendant’s counsel, however, that the Board for the Correction of Military Records is not a part of the discharge procedure which had been completed in the case, but that the Board acts only “as a matter of grace” and, hence, its error was not fatal to the proceedings of plaintiff’s discharge.
Ul/HMATE FINDINGS
17. (a) When plaintiff submitted his application for retirement and his resignation he was under the impression, induced by defendant, that (1) he had a good chance for his retirement benefits and (2) such retirement benefits could be accorded him after an acceptance by the Air Force of his resignation which would be in lieu of court-martial. The facts are, however, that, at the time plaintiff submitted his application for retirement and his resignation, he did not have a good chance for retirement, but had a very slim chance, if any, and that if the Air Force accepted his resignation it could not approve his application for retirement.
(b) Plaintiff was actively misinformed by the Air Force respecting the effect of the submission by him of his application for retirement and his resignation.
Conclusion of Law
Upon the foregoing findings of fact and opinion, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover on his claim and judgment is entered to that effect, with the determination of the amount of recovery to be reserved for further proceedings under Rule 47 (c).

The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57(a).